**Robert Lee ORTEGA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–02–298–CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Nov. 22, 2006.

---

912

Randy Mack, Attorney At Law, Corpus Christi, for Appellant.

Michael A. Sheppard, District Attorney, Robert C. Lassmann, Asst. District Attorney, Cuero, and Jeffrey L. Van Horn, State Prosecuting Atty., Austin, for The State of Texas.

Before Justices HINOJOSA, YANEZ, and GARZA.

**OPINION ON REMAND**

Opinion by Justice GARZA.

Appellant, Robert Lee Ortega, was convicted of assault on a public servant and was sentenced to imprisonment for 75 years. *See* Tex. Penal Code Ann. § 22.01 (Vernon Supp.2006) (assault). On direct appeal following the conviction, a panel of this Court noted that appellant had been convicted of the offense of resisting arrest before he was charged with assault. *See* Tex. Penal Code Ann. § 38.03 (Vernon 2003) (resisting arrest); *Ortega v. State,* 131 S.W.3d 698, 700–01 (Tex.App.-Corpus Christi 2004), *rev'd,* 171 S.W.3d 895 (Tex. Crim.App.2005). Based on our examination of the elements of the two offenses as alleged in the different charging instruments, we concluded that resisting arrest was a lesser-included offense of assault on a public servant, a conclusion which rendered the offenses effectively the same offense for purposes of double jeopardy. *See Ortega,* 131 S.W.3d at 702–03. Because the Fifth Amendment protects against a second prosecution for the same offense after conviction, we reversed appellant's second conviction and entered a judgment of acquittal. *Id.* at 704.

On the State's petition for discretionary review, the Texas Court of Criminal Appeals held that the offenses were not the same and reversed our judgment. *Ortega v. State,* 171 S.W.3d 895 (Tex.Crim.App. 2005). The case was then remanded to this Court for consideration of appellant's remaining issues, including whether he was entitled to a jury charge on the offense of resisting arrest. We affirm.

**I.**

In his second issue, appellant contends that the trial court erred by refusing to charge the jury on resisting arrest. Under certain, limited circumstances, a criminal defendant in Texas will be entitled to a jury charge on a lesser-included offense of the offense charged. *See, e.g., Mathis v. State,* 67 S.W.3d 918,

925 (Tex.Crim.App.2002). The applicable test is referred to as the *Royster–Rousseau* test or sometimes as the *Royster–Aguilar* test. *See Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.1993); *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Royster v. State,* 622 S.W.2d 442, 444 (Tex.Crim.App.1981) (plurality opinion). The test has two steps: (1) first, determine whether the offense is a lesser-included offense of the offense charged; and (2) second, evaluate the evidence to determine whether there is some evidence that would permit a jury rationally to find that the defendant is guilty only of the lesser offense. *Mathis,* 67 S.W.3d at 925; *see also Pickens v. State,* 165 S.W.3d 675, 679 (Tex.Crim.App.2005).

In applying the *Royster–Rousseau* test to appellant's second issue, we are mindful of our obligation to follow the Texas Court of Criminal Appeals' opinion in *Ortega.* This is especially important because *Ortega* reversed our holding that resisting arrest was a lesser-included offense of assault on a public servant. *Ortega,* 171 S.W.3d. at 895. In doing so, however, the court of criminal appeals did not reach the opposite holding. That is, it did not hold that resisting arrest was not a lesser-included offense of assault on a public servant. It held that the offenses were not the same for purposes of double jeopardy. *Id.* at 900 ("By the *Blockburger* rule, the offenses were not the same.") (citing *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). The court's holding was based on the Supreme Court's *Blockburger* same-elements test, not on its own *Royster–Rousseau* test for giving instructions on lesser-included offenses. *See id.* For these reasons and others stated below, we conclude that *Ortega* does not resolve the first part of the *Royster–Rousseau* test as applied to appellant's second issue.

That is, we cannot correctly conclude based on *Ortega* that resisting arrest is not a lesser included offense for purposes of a jury charge.

Case law from the court of criminal appeals indicates that resisting arrest is a lesser-included offense of assault on a public servant. *See Preston v. State,* 700 S.W.2d 227, 230 n. 1 (Tex.Crim.App.1985) (stating that resisting arrest is a lesser-included offense of assault on a public servant); *Sutton v. State,* 548 S.W.2d 697, 699 (Tex.1977) (same). The State's brief defers to this precedent. *See* Brief for Appellee p. 8 ("The offense of resisting arrest is a lesser included offense on a peace officer.") (citing *Sutton,* 548 S.W.2d at 699). This puts us in the precarious position of reaching the same holding as our prior opinion, only this time outside the context of double jeopardy. *See Lofton v. State,* 45 S.W.3d 649, 651 (Tex.Crim.App.2001) (treating the first-prong of the *Royster–Rousseau* test as satisfied because the State raised no challenge).

In again holding that resisting arrest is a lesser-included offense of assault on a public servant, we emphasize that we have not strayed from the higher court's precedent in *Ortega.* The double jeopardy issue addressed in *Ortega* turned on the court's application of the *Blockburger* test to the statutory elements of the offenses. Given that the statutes for resisting arrest and assault are different and have different elements, the court was able to safely conclude that the offenses were not the same. *See Ortega,* 171 S.W.3d. at 900.

The question before us is not whether the offenses were the same. Instead, we are asked to decide whether resisting arrest is a lesser-included offense of assault on a public servant under Texas law. *See* Tex.Code Crim. Proc. Ann. art. 37.09(1)

(Vernon 1981) (stating that an offense is a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged"). Although our prior opinion cited and relied on article 37.09(1) in making that determination, it also relied on Texas case law that was significantly affected, if not overruled, by the court of criminal appeals in *Ortega*. In an effort to avoid relying on case law that is no longer valid, we continue to observe the distinction between *Blockburger's* same-elements test for double jeopardy and the court of criminal appeals' *Royster–Rousseau* test for lesser-included offenses.

This distinction can be appreciated by comparing two recent opinions, one from the Third Court of Appeals and the other from the Twelfth Court of Appeals. *Dunklin v. State,* 194 S.W.3d 14, 22 (Tex. App.-Tyler 2006, no pet.); *State v. Guzman,* 182 S.W.3d 389, 392 (Tex.App.-Austin 2005, no pet.). Both opinions relied on the court of criminal appeals' opinion in *Ortega*.

*Guzman* involved a double jeopardy issue. The Third Court cited *Ortega* as effectively overruling the "same conduct" test used by the court of criminal appeals in cases such as *Ex parte Peterson,* 738 S.W.2d 688 (Tex.Crim.App.1987) and *May v. State,* 726 S.W.2d 573 (Tex.Crim.App. 1987). The Third Court noted that *Peterson* and *May* took the "same conduct" test from the Supreme Court's decision in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), a decision which was later overruled by the Supreme Court in *U.S. v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). *See Guzman,* 182 S.W.3d at 392. According to the Third Court, the "same conduct" analysis used in *Peterson* and *May* did not retain any "vitality" after *Ortega*. *Id.*

In *Dunklin,* the Twelfth Court was faced with the same question presented by appellant's second issue in this case, namely, whether resisting arrest is a lesser-included offense of assault on a public servant for purposes of determining whether a jury instruction should be given under the *Royster–Rousseau* test. *See Dunklin,* 194 S.W.3d at 22. To answer the question, the Twelfth Court relied in part on the court of criminal appeals' holding in *Ortega*. *See id.* Specifically, the Twelfth Court cited *Ortega* for the proposition that resisting arrest is not a lesser-included offense of assault on a public servant because it requires proof of two elements that assault on a public servant does not: (1) preventing or obstructing a peace officer from effecting an arrest and (2) using force against the peace officer. *Id.* (citing *Ortega,* 171 S.W.3d at 899–900).

Although *Dunklin* involved the same jury charge issue as this case, we find the approach taken by the Third Court of Appeals in *Guzman* to be the more appropriate treatment of *Ortega*. *Ortega* dealt with double jeopardy, not a jury instruction. If we were to extend *Ortega* to jury charge issues, resisting arrest would never be a lesser-included offense of assault on a public servant. That much is certain because *Ortega* looked only to the penal code in concluding that the offenses were different. Given that resisting arrest and assault on a public servant are different offenses in the penal code, it is unclear how they could ever be the same offense under *Ortega's* strictly statutory approach to double jeopardy. It is also unclear how resisting arrest could ever be a lesser-included offense of assault on a public servant if *Ortega* were interpreted as superceding the *Royster–Rousseau* test. We are particularly reluctant to reach such a holding because the court of criminal ap-

peals has clearly stated that resisting arrest is a lesser included offense of assault on a public servant. *Preston*, 700 S.W.2d at 230 n. 1 (stating that resisting arrest is a lesser-included offense of assault on a public servant); *Sutton*, 548 S.W.2d at 699 (same).

That is not to say that *Ortega* had no effect on Texas case law. Much to the contrary, *Ortega* overruled the court of criminal appeals' precedent in *Peterson, Parrish*, and *Perez. See State v. Perez*, 947 S.W.2d 268, 270–71 (Tex.Crim.App. 1997); *Parrish v. State*, 869 S.W.2d 352, 354 (Tex.Crim.App.1994); *Ex parte Peterson*, 738 S.W.2d 688, 691 (Tex.Crim.App. 1987). Those cases instructed the courts to begin with the statutory elements of the offenses, but they also warned against ignoring the importance of other germane considerations such as the "critical elements of the charging instrument." *See Perez*, 947 S.W.2d at 270–71; *Parrish*, 869 S.W.2d at 354; *Ex parte Peterson*, 738 S.W.2d at 691. We cited and relied on these cases in our prior opinion. For instance, we cited and relied on *Ex parte Peterson* as "determinative" of appellant's double jeopardy issue. Even so, *Ex parte Peterson* was never discussed in the higher court's opinion in *Ortega*. We also followed the law as stated in *Parrish*, which unlike *Ortega*, looked beyond the elements of the offenses as stated in the penal code:

> In Texas, an offense is considered to be included within another if, among other things, "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Tex.Code Crim. Proc. Ann. art. 37.09(1) (West 1981). Our statute law thus describes includedness in much the same way *Blockburger* describes sameness. Yet we have long

considered more than merely statutory elements to be relevant in this connection. *See, e.g., Goodin v. State*, 750 S.W.2d 789 (Tex.Crim.App.1988); *Cunningham v. State*, 726 S.W.2d 151 (Tex. Crim.App.1987); *Broussard v. State*, 642 S.W.2d 171, 173 (Tex.Crim.App.1982); *Day v. State*, 532 S.W.2d 302 (Tex.Crim. App.1976). We acknowledge, for example, that other critical elements of an accusatory pleading, such as time, place, identity, manner and means, although not statutory, are germane to whether one offense includes another under Texas law and to whether several offenses are the same for jeopardy purposes. *See Ex parte Jefferson*, 681 S.W.2d 33 (Tex.Crim.App.1984); *Neely v. State*, 571 S.W.2d 926 (Tex.Crim.App.1978). We likewise think it reasonably clear from the various opinions in *Dixon* that the essential elements relevant to a jeopardy inquiry are those of the charging instrument, not of the penal statute itself. Statutory elements will, of course, always make up a part of the accusatory pleading, but additional non-statutory allegations are necessary in every case to specify the unique offense with which the defendant is charged.

*Parrish*, 869 S.W.2d at 354.

We also relied on *Perez:*

> [We use] the Supreme Court's "same elements" test for determining whether the separate provisions charge the same offense for purposes of double jeopardy. Under this analysis, two statutes do not charge the same offense if "each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. But more than the statutory elements are relevant in conducting a "same elements" test. The elements contained in the charging

instruments, rather than the penal provisions, are controlling.

*Perez,* 947 S.W.2d at 270–71.

As noted above, *Ortega* overruled *Peterson, Parrish,* and *Perez* by creating a new approach that looks only to the statutory elements of the offenses to determine if they are the same. Although *Ortega* is as irreconcilable with the *Royster–Rousseau* test as it is with the court's prior precedent in *Peterson, Parrish,* and *Perez,* we have no authority to abandon the firmly-rooted legislative and jurisprudential directive that we must consider more than statutory elements to determine whether one offense is a lesser-included offense of another. *See* Tex.Code Crim. Proc. Ann. art. 37.09(1) (Vernon 1981) (stating that an offense is a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged"); *Jones v. State,* 586 S.W.2d 542, 545 (Tex. Crim.App.1979) ("The relevant test is whether the lesser offense could be proved by the same facts necessary to establish the offense charged."). Our reluctance to do so is only heightened by the seemingly inconsistent approaches taken in some of the court's most recent opinions, including *Campbell, Hayward,* and *Ortega.* These cases require closer scrutiny.

Only a few months before *Ortega,* the court of criminal appeals handed down *Campbell v. State,* 149 S.W.3d 149, 155 (Tex.Crim.App.2004), a case which dealt with whether the defendant was entitled to a jury charge on a lesser-included offense. Although no double jeopardy issues were at play in *Campbell,* the court borrowed heavily from *Parrish* (quoted above) in giving the following explanation for how the courts are to determine lesser-included offenses:

Generally, to determine whether an offense is a lesser-included offense, this Court must evaluate the entire record and consider both the offense charged and the facts proven in this case. . . . The essential point to take from [our double jeopardy cases] is that, in determining whether an offense is a lesser-included offense, one must consider statutory elements and surrounding facts and circumstances to see if there are two distinct criminal acts.

*Id.* at 154–55.

Shortly after deciding *Campbell,* the court of criminal appeals issued another similar case. *See Hayward v. State,* 158 S.W.3d 476, 478–79 (Tex.Crim.App.2005). In *Hayward,* the court explained that "for double jeopardy purposes and for purposes of lesser-included offense instructions," "the critical elements of the charging instrument, including time, place, identity, and manner and means, are relevant to the inquiry of whether one offense includes another." *Id.* at 479.

This brings us back to *Ortega.* There, the court held that we erred in looking beyond the statutory elements of the offenses in making the double jeopardy determination of whether two different offenses were really the same. Although the court of criminal appeals did not discuss *Peterson, Parrish, Perez,* or *Campbell,* the clear implication of *Ortega* is that the extra-statutory approach used in those cases is no longer valid and has been overruled. *See, e.g., Guzman,* 182 S.W.3d at 392.

The most recent case cited in the court of criminal appeals opinion in *Ortega,* other than our opinion, was the Supreme Court's opinion in *U.S. v. Dixon. See Dixon,* 509 U.S. at 688, 113 S.Ct. 2849. Although unquestionably the law of the land, *Dixon*

came years before *Parrish, Perez, Campbell,* and *Hayward,* all of which either cited or relied on *Dixon* whether directly or indirectly. The salient point to take here is that *Parrish, Perez, Campbell,* and *Hayward* are of dubious validity and authority, especially given that they were neither relied upon nor cited in *Ortega.* Given that we relied upon on them in reaching our "erroneous" holding, we now rely instead on the agreement of the parties and also on the determinative cases of *Preston* and *Sutton,* both of which came from the court of criminal appeals and state that resisting arrest is a lesser-included offense of assault on a public servant. *Preston,* 700 S.W.2d at 230 n. 1; *Sutton,* 548 S.W.2d at 699.

In doing so, we have compared *Ortega* and its strictly-statutory approach to the extra-statutory approaches used in *Peterson, Parrish,* and *Perez.* We have noted and discussed *Campbell* and *Hayward,* where the court of criminal appeals used double jeopardy principles to answer state law questions of includedness. We now note a final conflict between the court's precedent in *Ortega* and another recent case. *See Pickens v. State,* 165 S.W.3d 675, 679 (Tex.Crim.App.2005). In *Pickens,* a case involving an includedness issue but not double jeopardy, the court explained that the "relevant test is whether the lesser offense could be proved by the same facts necessary to establish the offense charged." *Id.* (citing *Jones v. State,* 586 S.W.2d 542, 545 (Tex.Crim.App.1979)).

■ Unable to reconcile *Ortega's* purely statutory analysis with the extra-statutory approaches taken in *Parrish, Perez, Campbell, Hayward,* and *Pickens,* we defer instead to the two cases from the court of criminal appeals that we cited in our original opinion but which were not dis-

cussed in *Ortega.* *See Preston,* 700 S.W.2d at 230 n. 1; *Sutton,* 548 S.W.2d at 699. We also defer to the court of criminal appeals' recent opinion in *Lofton,* where the court treated the first part of the *Royster–Rousseau* test as being met because the State raised no challenge to it. *Lofton,* 45 S.W.3d at 651. Here, the State does not contest the first part of the *Royster–Rousseau* test. We therefore conclude, based on *Lofton,* that the first prong has been met.

■ Turning to the second part of the *Royster–Rousseau* test, we again conclude that *Lofton* is determinative. In *Lofton,* the court held that the trial court did not err in refusing the defendant's requested jury charge on resisting arrest because the evidence showed that he struck the arresting officer twice and caused an injury to the officer. *See id.* at 652. According to the court, on such facts, "resisting arrest was not a rational alternative to assault on a public servant." *Id.* The instant case presents no basis for distinguishing the court's precedent. The evidence shows that appellant struck the arresting officer in the chest and face using his fists. Accordingly, we hold that the trial court did not err in denying the requested jury charge. Appellant's second issue is overruled.

## II.

■ In his third issue, appellant contends that the trial court erred in not instructing the jury pursuant to section 9.31(c) of the penal code. *See* Tex. Penal Code Ann. § 9.31(c) (Vernon 2003). That provision reads as follows:

(c) The use of force to resist an arrest or search is justified:

(1) if, before the actor offers any resistance, the peace officer (or person acting

at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

*Id.*

■ There is no evidence in this case that raises an issue regarding either part of the statute. Appellant did not testify at trial. Although it is clear that the issue of self-defense may be raised by evidence other than the defendant's testimony, *see, e.g., Smith v. State,* 676 S.W.2d 584 (Tex. Crim.App.1984), it is equally clear that some evidence must show that the defendant reasonably believed that force was necessary to protect himself against the unlawful force of another. *See Nethery v. State,* 692 S.W.2d 686, 704 (Tex.Crim.App. 1985); *see also Reed v. State,* 703 S.W.2d 380, 382 (Tex.App.-Dallas, pet.ref'd). Appellant directs our attention to the arresting officer's use of a handgun prior to arrest; however, the uncontested evidence shows that the arresting officer did not discharge his weapon at any time during the altercation that led to appellant's arrest. The evidence further shows that the weapon was holstered at the time appellant used force against the officer. Accordingly, appellant's third issue is overruled.

### III.

■ In his fourth issue, appellant contends that the trial court erred in excluding evidence that tended to prove the ar-

resting officer was placed on probation sometime after appellant's arrest. Appellant's bill of exceptions shows that in a proceeding unrelated to the events leading to appellant's arrest, the officer in question was given a "30–day review" or probationary period as a result of not "sending ... [his] schedule to the Sheriff's Office." Although appellant contends that this evidence would have allowed him "to test the truth and veracity of the witness," he has demonstrated no meaningful connection between the alleged misconduct and the commission of the offense for which he was prosecuted. *See Parker v. State,* 263 S.W.2d 949, 950 (Tex.Crim.App.1953). Appellant has not demonstrated that the trial court's evidentiary ruling was an abuse of discretion. *See Brimage v. State,* 918 S.W.2d 466, 506 (Tex.Crim.App.1996). Accordingly, his fourth issue is overruled.

### IV.

■ In his fifth issue, appellant contends that the evidence is legally insufficient to support a conviction for assault on a public servant. In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim.App.2004) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We have reviewed the evidence under the *Jackson* standard and conclude that a rational trier of fact could have found the essential elements of assault on a public servant beyond a reasonable doubt.[1] Among other things, the evidence included testimony

---

1. The conviction for assault on a public servant required proof of the following:

1. Appellant
2. intentionally, knowingly, or recklessly

from eyewitnesses who saw appellant strike the arresting officer multiple times with his fist, causing the officer's jaw to turn red. The arresting officer testified that appellant had hurt him and that he had to take an over-the-counter pain reliever at the hospital as a result of his injury. Based on this testimony, we overrule appellant's fifth issue, concluding as we must, that the finder of fact is free to believe or disbelieve any or all parts of a witness's testimony. *See Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. 1981).

## V.

The judgment of the trial court is affirmed.

3. caused bodily injury to another
4. who the person knew was a public servant
5. (a) while the public servant was lawfully discharging an official duty, or (b) in retaliation or on account of an exercise of official power or performance of an official duty as a public servant.
*See* Tex. Penal Code Ann. § 22.01 (Vernon Supp.2006).