

# NUMBER 13-08-00001-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **LEE ROY REED,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

**On appeal from the 24th District Court of Victoria County, Texas.**

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

We withdraw our memorandum opinion and judgment of March 19, 2009, and substitute the following in its place.

Appellant, Lee Roy Reed, was convicted by a jury of aggravated sexual assault by contact, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (a)(2)(B), (e) (Vernon Supp. 2008). The jury assessed punishment at twenty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice ("TDCJ-ID"). Reed now appeals, contending that the evidence was legally insufficient to support his conviction. We affirm.

### I. BACKGROUND

Reed was indicted by a Victoria County grand jury on April 19, 2007 on one count

of aggravated sexual assault by penetration, *see id.* § 22.021(a)(1)(B)(i) (Vernon Supp. 2008), (a)(2)(B), and one count of indecency with a child, *see id.* § 21.11(a)(1) (Vernon 2003).[1]  At trial, held on December 4 and 5, 2007, the State presented the testimony of seven witnesses.

Victoria Police Department officer Christopher Canales testified that he was appointed to investigate an allegation of aggravated sexual assault made by the alleged victim's mother, T.S.  According to Officer Canales, T.S. reported that Reed had sexually assaulted her five-year-old daughter, T.H.  Officer Canales stated that T.S. positively identified Reed out of a six-photo spread, but that no DNA or other physical evidence was found linking Reed to the alleged crime.

T.S. testified that she and Reed had a "[h]usband and wife-type relationship" and that Reed moved in with T.S. and her children in 2004.  T.S. stated that, on August 27, 2006, T.S.'s older daughter Kayla, who was ten years old at the time, came to her and told her that "[T.H.] just talked to her and told her Lee Roy licked her 'kiki.'"  T.S. then asked T.H. whether this was true, and T.H. responded that it was.  On cross-examination, T.S. conceded that she was not present when the alleged crime occurred and could not state from her personal knowledge what, if anything, happened.[2]

T.H. then took the witness stand and testified that she is six years old and is in first

---

[1] The first count of the indictment alleged specifically as follows:

[O]n or about the 26th day of August, A.D., 2006, and before the making and filing of this complaint, in the County of Victoria and State of Texas one LEE ROY REED did then and there intentionally and knowingly cause the penetration of the sexual organ of [T.H.], a child who was then and there younger than fourteen (14) years of age and not the spouse of the defendant, by defendant's tongue . . . .

The second count alleged:

On or about the 26th day of August, A.D., 2006, and before the making and filing of this complaint, in the County of Victoria and State of Texas one LEE ROY REED did then and there, with the intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly engage in sexual contact with [T.H.] by touching the genitals of [T.H.], a child younger than seventeen (17) years and not the spouse of the defendant . . . .

[2] T.S. also stated that she was currently on probation in Pennsylvania, where she had moved with her children after terminating the relationship with Reed.  According to T.S., the probation was imposed after she had pleaded guilty to a crime "[s]imilar to . . . endangering a child" for allowing Reed in her home.

grade.  T.H. stated that her mother used to live with "a man named Lee Roy," whom she identified as Reed, but that he does not live with her now.  The following exchange then occurred:

Q [State's attorney] Do you remember a time when your mom went to the grocery store and left you at home?

A [T.H.]            Yes.

    . . . .

Q               Did [Lee Roy] do something to you when your mom went to HEB?

A               Yes.

Q               What happened?

A               He molested me.

Q               Okay.  What do you mean by that?

A               I don't know.

Q               This isn't fun to talk about; is it?

A               (No audible answer)

Q               Did Mr. Lee Roy touch any part of your body—

A               Yes.

Q               —when your mom was at HEB?

A               Yes.

Q               Okay.  What part of your body did he—

A               Down there.  (Indicating)

Q               What?

A               Down there.  (Indicating)

Q               What?  Down there—

A               (Indicating)

Q               Was there a name, when you were a little bit younger, that you called that part of your body?

3

A          Yes.

Q          What did you call it?

A          A "kiki."

Q          Is that your part of your body between your legs?

A          Yes.

Q          Is that the part of your body where you make "wee-wee," when you go to the bathroom?

A          Yes.

Q          Is it on the front of you or back of you?

A          Front of me.

Q          How did he touch your "kiki"?

A          With his tongue.

T.H. then stated that she later informed her sister, Kayla, about what happened. When the State's attorney asked T.H. whether her mother had then asked her anything, T.H. stated, "No."

Leslie Kallus, a Sexual Assault Nurse Examiner, testified that she performed a forensic exam on T.H. on August 27, 2006. Kallus stated that she found no damage or bruising on T.H.'s hymenal walls and that the exam revealed no trauma. Kallus noted that T.H. had "wiped and washed" her genitals and had gone to the bathroom prior to the exam; when asked by the State's attorney whether this "could . . . account for why there was no DNA," Kallus replied, "Yes, that could account for it."

Robin Olson Castro, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, testified that she prepared a "Serology/DNA Report" on Reed, based on evidence including "four oral swabs, one oral smear, four vaginal swabs, one vaginal smear, two dried body fluids . . . two saliva swabs and two fingernail swabs," as well as a pair of pants, a shirt and a part of shorts. Castro stated that Reed's DNA was not found on any of the items that she tested.

4

Cynthia Cisneros Ramirez, a forensic interviewer for HOPE of South Texas, a child advocacy center, stated that she interviewed T.H. on August 26, 2006.[3] On cross-examination, when defense counsel asked Ramirez if it is "possible to lead children in saying things they might not otherwise say," Ramirez responded, "Yes, that's possible."

Kimberly, T.H's eighteen-year-old sister, testified that she spoke to Reed on the telephone sometime "between Thanksgiving and Christmas" of 2006. Kimberly stated that she asked Reed "if he molested my sister." Kimberly then testified: "First, he didn't want to answer me. He just sat there. Then I said, 'I can't do nothing about it. Just tell me. I mean, it was very wrong for you to do that, if you did it.' And he said, 'Yes, I did.'"

The State then rested, after which the defense rested without calling any witnesses. The jury subsequently returned a verdict of guilty of aggravated sexual assault by contact, a lesser included offense to the offense alleged in the first count of the indictment. *See id.* § 22.021(a)(1)(B)(iii), (a)(2)(B). The jury subsequently assessed punishment at twenty years' imprisonment in the TDCJ-ID. The trial court certified Reed's right to appeal on December 5, 2007, and this appeal followed.

## II. DISCUSSION

By his sole issue, Reed asserts that "[t]here is no tangible physical evidence that [he] committed any crime." We construe this as a challenge to the legal sufficiency of the evidence.

### A. Standard of Review

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). "This standard is meant to give 'full play to the [jury's] responsibility fairly' to 'draw reasonable inferences from basic facts to ultimate facts.'" *Id.*

---

[3] A video recording of Ramirez's interview with T.H. was played to the jury.

(quoting *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, Reed committed the offense of aggravated sexual assault by contact if he (1) intentionally or knowingly (2) caused the sexual organ of T.H. to contact or penetrate Reed's mouth, anus, or sexual organ, and if (3) T.H. was then younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (a)(2)(B). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b) (Vernon 2003).

## B.    Analysis

The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Kemple v. State*, 725 S.W.2d 483, 485 (Tex. App.–Corpus Christi 1987, no pet.). The victim's description of what occurred does not need to be precise, and wide latitude is given to such testimony. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). There is no requirement that physical, medical, or other evidence be offered to corroborate the child victim's testimony. *See Garcia*, 563 S.W.2d at 928; *Kemple*, 725 S.W.2d at 485. Further, intent can be inferred from the acts, words, and conduct of the accused. *DeLeon v. State*,

77 S.W.3d 300, 312 (Tex. App.–Austin 2001, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982)).

T.H. testified that Reed "molest[ed]" her and that he touched her "[d]own there . . . [w]ith his tongue." When the State's attorney asked T.H. if "[d]own there" referred to "the part of your body where you make 'wee-wee,' when you go to the bathroom," T.H. replied, "Yes." This testimony by itself is sufficient to sustain a conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07.

Reed contends that the evidence is nevertheless insufficient to support his conviction because T.H.'s testimony "is not believable beyond a reasonable doubt." Specifically, Reed notes that T.H.'s "use of a word ['molest'] well above a normal first grade vocabulary, coupled with her inability to define the word, raises the possibility that her testimony was coached and/or coerced." Reed also claims that T.H.'s testimony "is full of holes and contradictions," noting that she denied having been asked by her mother whether Reed had done anything to her. However, it is within the sole province of the jury to reconcile conflicts, contradictions, and inconsistencies in the evidence and testimony. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). The jury is responsible for judging the credibility of the witnesses, and it is free to believe or disbelieve any portion of a witness' testimony. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); *Ortega v. State*, 207 S.W.3d 911, 920 (Tex. App.–Corpus Christi 2006, no pet.). We must presume that the jury resolved any conflicts in favor of the prosecution, and we must defer to the jury's determination to believe T.H.'s testimony. *See Turro*, 867 S.W.2d at 47.

Finally, Reed notes that he "is aware that sexual assault is the only crime in which the defendant can be found guilty on the mere allegation of the victim without any additional proof" but suggests that "in light of today's societal mores, perhaps it is time to reevaluate that precedent." We note, however, that the testimony of T.H. was not the only

evidence supporting Reed's conviction; rather, her testimony was bolstered by the outcry testimony of her mother as well as the testimony of her sister that Reed confessed to her over the telephone. Moreover, the rule that the uncorroborated testimony of a child victim is alone sufficient to support a conviction of sexual assault is not mere judicial precedent, but has long been enshrined in statute. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07. Accordingly, only the legislature may constitutionally "reevaluate" that rule. *See* TEX. CONST. art. II, § 1.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt the essential elements of aggravated sexual assault by contact. *See Sanders*, 119 S.W.3d at 820. Thus, the evidence was legally sufficient to support Reed's conviction. His sole issue is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.

 

 

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 9th day of April, 2009.