NUMBER 13-08-00597-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


DANIEL ALVARADO, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 377th District Court of Victoria County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Garza



 Appellant, Daniel Alvarado, was convicted of indecency with a child, a second-degree felony, and aggravated sexual assault, a first-degree felony. See Tex. Penal Code
Ann. §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2009). The trial court
assessed punishment at twenty years' imprisonment for each offense, with the sentences
to run concurrently. By a single issue, Alvarado contends that the evidence was factually
insufficient to support his conviction. We affirm.

I. Background

 Deputy Michele Thomas of the Victoria County Sheriff's Department testified at trial
that she was dispatched to a residence in Inez, Texas, on March 17, 2007, in response to
a report of sexual assault of a child. The complaint was made by B.M., the grandmother
of the alleged victim S.M. Investigator Carissa Barker, also of the Victoria County Sheriff's
Department, testified that no Sexual Assault Nurse Examination ("SANE") was performed
on S.M. because, due to the length of time between the alleged assaults and the outcry,
there was "little to no chance" that any forensic evidence of the alleged assaults could be
obtained. (1) Both Deputy Thomas and Investigator Barker acknowledged that no physical
evidence of the alleged assaults on S.M. was ever recovered.

 Cynthia Ramirez, a forensic interviewer with Hope of South Texas, a victim's
advocacy center, testified that she interviewed S.M. on March 21, 2007. Ramirez
described S.M. as being "very calm and articulate" during the interview, but that "[o]nce we
got into the allegations, she kind of clammed up a little bit." Ramirez testified that she
showed S.M. an anatomical drawing of a female and asked S.M. to show her "what part
of her body she had been touched on." S.M. responded by marking "[t]he part she called
her 'private.'" On cross-examination, Ramirez acknowledged that S.M. did not give a clear
response as to whether penetration had occurred; specifically, S.M. "was not specific as
to--as far as what part of his body had been used to touch her."

 Lisa Escamilla testified that she is an assistant manager at Sage Creek Apartments
in Victoria, Texas, and that she knew Alvarado as well as S.M. and her mother during the
time that they lived there. Escamilla testified that she had the opportunity to observe
Alvarado and S.M. interact in the swimming pool at the apartment complex, where she
observed the following:

[Alvarado] was in the pool and he would play around with [S.M.]. And one
day, he put her across--her legs across him. And most people carry people
around the area by the stomach and their arms. And he actually had his
hands more towards her thighs and buttocks. . . . It just didn't look normal
between a parent and a child. She would be swimming and you could see
the fear in her eyes. She was asking for help.[ (2)]


Escamilla testified that she contacted the security officer on duty at the apartment complex
to express her concerns that Alvarado was behaving inappropriately. The security officer
advised Escamilla to contact Child Protective Services; Escamilla did so.

 The State also called Anita Figirova, who stated that she lived in the same
apartment complex and knew Alvarado as well as S.M. and her mother. Like Escamilla,
Figirova observed activity between Alvarado and S.M. in the swimming pool that alarmed
her: "One time, they were swimming and he went to pick her up, but he didn't pick her up
like from the waist. He would pick her up, like holding her bottom, and he would always
throw her and I didn't like the way it was done." Figirova also testified that she observed
Alvarado kissing S.M. in an inappropriate manner--"more like a boyfriend kissing a
girlfriend," according to Figirova.

 S.M. then took the witness stand and testified that she is eleven years old (3) and lives
with her grandparents. S.M. stated that she used to live at Sage Creek Apartments with
her mother, who is now deceased. At some point, Alvarado became involved in a
relationship with S.M.'s mother and moved into the apartment with them. S.M. testified as
follows:

Q [State's attorney] Did Daniel [Alvarado] ever do anything to you?


A [S.M.] Yes.


Q Do you remember the first time that happened?


A Uh-huh.


Q If you could, I want you to describe to the jury around
what time of day was this?


A Night.


Q Where were you?


A Sleeping with my mom.


Q Just the two of you?


A No. With him.


 . . . .


Q And what happened?


A I was sleeping in the middle of them and I was going to
sleep and he started touching me and I got on the other
side of my mother and he reached over.


Q And, [S.M.], when we--Unfortunately, we have to go
into a little bit of detail. When you say Daniel was
touching you, what was he using to touch you and
where was he touching you?


A His finger.


Q When you say "finger," whose finger?


A Daniel's finger.


Q Where was he touching you?


A My private.


Q When you say "private," do you know another name for
it?


A No.


Q That's okay. Is it where you pee?


A Yes.


 S.M. testified that Alvarado touched her twice that night, that her clothes were on
at the time, and that Alvarado touched her underneath her clothes. The prosecutor then
asked whether or not S.M. recalled telling Ramirez at Hope of South Texas that her clothes
were off that night; S.M. stated that she did not remember that. The prosecutor continued:

Q Was there any other day he touched you? Did he touch
you on any other day?


A Yes.


Q How many times?


A Daily.


Q Daily?


A Yes.


 . . . .


Q Do you remember the touching ever getting worse?


A Yes.


 . . . .


Q Can you explain to the jury what happened when it got
worse?


A He put his finger in me.


Q And, [S.M.], when you say he put his finger in you,
where did he put his finger?


A Between my legs.


Q In your private?


A Yes.


 On cross-examination, S.M. agreed that she had previously told Ramirez that she
could not remember whether Alvarado had touched her on top of or underneath her
clothing. She also acknowledged that she had told Misty Rubio, a neighbor at Sage Creek
Apartments, that "there was nothing going on." When defense counsel asked S.M. if "a
lot of things you are saying today are things you didn't tell [Ramirez]," S.M. replied in the
affirmative and explained: "I just didn't feel comfortable telling her."

 The defense did not call any witnesses to testify on Alvarado's behalf. The jury
subsequently found Alvarado guilty of aggravated sexual assault and indecency with a
child. See id. §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (a)(2)(B). The trial court then sentenced
Alvarado to twenty years' confinement in the Institutional Division of the Texas Department
of Criminal Justice for each count, with the sentences to run concurrently. This appeal
followed.

II. Discussion

A. Standard of Review

 In conducting a factual sufficiency review, we consider all the evidence in a neutral
light and ask whether the jury was rationally justified in finding guilt beyond a reasonable
doubt. Grotti v. State, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008) (citing Watson v.
State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). The verdict will be set aside only
if (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust, or (2) it is against the great weight and preponderance of the evidence. 
Watson, 204 S.W.3d at 415 (citing Johnson v. State, 23 S.W.3d 1, 10 (Tex. Crim. App.
2000)).

 Factual sufficiency is measured by the elements of the offense as defined by a
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd). Under
a hypothetically correct jury charge, Alvarado committed the offense of indecency with a
child if (1) he engaged in sexual contact with S.M. or caused S.M. to engage in sexual
contact, and (2) S.M. was younger than seventeen years of age at the time. See Tex.
Penal Code Ann. § 21.11(a)(1). Alvarado committed the offense of aggravated sexual
assault if (1) he intentionally or knowingly caused the penetration of the anus or sexual
organ of S.M. by any means, without her consent, and (2) S.M. was younger than fourteen
years of age at the time. See id. § 22.021(a)(1)(B)(i), (a)(2)(B). A person acts intentionally
with respect to a result of his conduct when it is his conscious objective or desire to engage
in the conduct or cause the result; a person acts knowingly with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the result. Id.
§ 6.03(a), (b) (Vernon 2003).

B. Analysis

 Alvarado contends that the evidence was factually insufficient because "the State
failed to provide credible evidence to sustain its conviction." Specifically, Alvarado notes
that S.M.'s testimony was the only direct evidence adduced as to the elements of the
charged crimes, and he contends that her testimony was unreliable.

 The testimony of a child victim is alone sufficient to support a conviction for
aggravated sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); see
Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). The victim's description of
what occurred does not need to be precise, and wide latitude is given to the testimony of
a child victim of sexual abuse. Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App.
1990) (en banc). Penetration may be proved by circumstantial evidence, and there is no
requirement that the child victim be able to testify as to penetration. Id. at 133. Moreover,
intent can be inferred from the acts, words, and conduct of the accused. DeLeon v. State,
77 S.W.3d 300, 312 (Tex. App.-Austin 2001, pet. ref'd) (citing Hernandez v. State, 819
S.W.2d 806, 810 (Tex. Crim. App. 1991); Dues v. State, 634 S.W.2d 304, 306 (Tex. Crim.
App. 1982)). Here, S.M. testified that Alvarado touched her "private" and later "put his
finger in" her "private." This testimony is sufficient, by itself, to sustain Alvarado's
conviction for aggravated sexual assault. See Tex. Code Crim. Proc. Ann. art. 38.07.

 Alvarado also notes that S.M.'s "testimony was vague in terms of when the alleged
incidents occurred . . . and the extent of the alleged abuse." However, the State was not
required to establish the exact dates that the assaults occurred, so long as the date proved
"is anterior to the presentment of the indictment and within the statutory limitation period
and the offense relied upon otherwise meets the description of the offense contained in the
indictment." Yzaguirre v. State, 957 S.W.2d 38, 39 (Tex. Crim. App. 1997) (citing Sledge
v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997)). The evidence established that: 
(1) the alleged assaults took place at the Sage Creek Apartments; (2) S.M. and her mother
moved into that apartment complex around January of 2006; and (3) S.M. moved out on
or about October 24, 2006, to live with her grandparents. Accordingly, the State met its
burden to establish the timeframe during which the assaults occurred. See id.

 Finally, Alvarado notes that S.M. admitted that her trial testimony included
information that she did not tell to Ramirez during her interview at Hope of South Texas. 
In particular, S.M. did not explicitly tell Ramirez that penetration had occurred. However,
it is the jury's sole responsibility to judge the credibility of witnesses, and the jury is free to
believe or disbelieve any portion of a witness's testimony. Cain v. State, 958 S.W.2d 404,
408-09 (Tex. Crim. App. 1997); Ortega v. State, 207 S.W.3d 911, 920 (Tex. App.-Corpus
Christi 2006, no pet.). Moreover, it is within the sole province of the jury to reconcile
conflicts, contradictions, and inconsistencies in the evidence and testimony. Swearingen
v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003); Bowden v. State, 628 S.W.2d 782,
784 (Tex. Crim. App. 1982). The jury was free to resolve the apparent inconsistency
between S.M.'s trial testimony and her statements to Ramirez by believing her trial
testimony. See Cain, 958 S.W.2d at 408-09; Ortega, 207 S.W.3d at 920.

 Viewing the entire record in a neutral light, we cannot say that the jury's verdict is
clearly wrong, manifestly unjust, or against the great weight and preponderance of the
evidence. See Watson, 204 S.W.3d at 415. Accordingly, the jury was rationally justified
in concluding, beyond a reasonable doubt, that Alvarado committed the offenses of
aggravated sexual assault and indecency with a child. See Grotti, 273 S.W.3d at 283. We
overrule Alvarado's sole issue on appeal.

III. Conclusion

 The judgment of the trial court is affirmed.



 

 DORI CONTRERAS GARZA,

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and

filed this the 29th day of October, 2009.
1. Jennifer Mumphord, a Sexual Assault Nurse Examiner, testified that SANE exams are typically only
done if the incident occurred less than ninety-six hours prior to the exam; otherwise, "there is probably nothing
that could be obtained."
2. Defense counsel objected to this testimony; however, the trial court overruled the objection, and that
ruling is not contested by Alvarado on appeal.
3. S.M. was nine years old at the time the alleged assaults took place.