

NUMBER 13-08-00597-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DANIEL ALVARADO,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 377th District Court of Victoria County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Garza**

Appellant, Daniel Alvarado, was convicted of indecency with a child, a second-degree felony, and aggravated sexual assault, a first-degree felony. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2009). The trial court assessed punishment at twenty years' imprisonment for each offense, with the sentences to run concurrently. By a single issue, Alvarado contends that the evidence was factually insufficient to support his conviction. We affirm.

### I. BACKGROUND

Deputy Michele Thomas of the Victoria County Sheriff's Department testified at trial that she was dispatched to a residence in Inez, Texas, on March 17, 2007, in response to

a report of sexual assault of a child.  The complaint was made by B.M., the grandmother of the alleged victim S.M.  Investigator Carissa Barker, also of the Victoria County Sheriff's Department, testified that no Sexual Assault Nurse Examination ("SANE") was performed on S.M. because, due to the length of time between the alleged assaults and the outcry, there was "little to no chance" that any forensic evidence of the alleged assaults could be obtained.[1]  Both Deputy Thomas and Investigator Barker acknowledged that no physical evidence of the alleged assaults on S.M. was ever recovered.

Cynthia Ramirez, a forensic interviewer with Hope of South Texas, a victim's advocacy center, testified that she interviewed S.M. on March 21, 2007.  Ramirez described S.M. as being "very calm and articulate" during the interview, but that "[o]nce we got into the allegations, she kind of clammed up a little bit."  Ramirez testified that she showed S.M. an anatomical drawing of a female and asked S.M. to show her "what part of her body she had been touched on."  S.M. responded by marking "[t]he part she called her 'private.'"  On cross-examination, Ramirez acknowledged that S.M. did not give a clear response as to whether penetration had occurred; specifically, S.M. "was not specific as to—as far as what part of his body had been used to touch her."

Lisa Escamilla testified that she is an assistant manager at Sage Creek Apartments in Victoria, Texas, and that she knew Alvarado as well as S.M. and her mother during the time that they lived there.  Escamilla testified that she had the opportunity to observe Alvarado and S.M. interact in the swimming pool at the apartment complex, where she observed the following:

> [Alvarado] was in the pool and he would play around with [S.M.].  And one day, he put her across—her legs across him.  And most people carry people around the area by the stomach and their arms.  And he actually had his hands more towards her thighs and buttocks. . . .  It just didn't look normal between a parent and a child.  She would be swimming and you could see

---

[1] Jennifer Mumphord, a Sexual Assault Nurse Examiner, testified that SANE exams are typically only done if the incident occurred less than ninety-six hours prior to the exam; otherwise, "there is probably nothing that could be obtained."

the fear in her eyes. She was asking for help.[2]

Escamilla testified that she contacted the security officer on duty at the apartment complex to express her concerns that Alvarado was behaving inappropriately. The security officer advised Escamilla to contact Child Protective Services; Escamilla did so.

The State also called Anita Figirova, who stated that she lived in the same apartment complex and knew Alvarado as well as S.M. and her mother. Like Escamilla, Figirova observed activity between Alvarado and S.M. in the swimming pool that alarmed her: "One time, they were swimming and he went to pick her up, but he didn't pick her up like from the waist. He would pick her up, like holding her bottom, and he would always throw her and I didn't like the way it was done." Figirova also testified that she observed Alvarado kissing S.M. in an inappropriate manner—"more like a boyfriend kissing a girlfriend," according to Figirova.

S.M. then took the witness stand and testified that she is eleven years old[3] and lives with her grandparents. S.M. stated that she used to live at Sage Creek Apartments with her mother, who is now deceased. At some point, Alvarado became involved in a relationship with S.M.'s mother and moved into the apartment with them. S.M. testified as follows:

| Q [State's attorney] | Did Daniel [Alvarado] ever do anything to you? |
| --- | --- |
| A [S.M.] | Yes. |
| Q | Do you remember the first time that happened? |
| A | Uh-huh. |
| Q | If you could, I want you to describe to the jury around what time of day was this? |
| A | Night. |
| Q | Where were you? |

---

[2] Defense counsel objected to this testimony; however, the trial court overruled the objection, and that ruling is not contested by Alvarado on appeal.

[3] S.M. was nine years old at the time the alleged assaults took place.

| | |
|---|---|
| A | Sleeping with my mom. |
| Q | Just the two of you? |
| A | No. With him. |

. . . .

| | |
|---|---|
| Q | And what happened? |
| A | I was sleeping in the middle of them and I was going to sleep and he started touching me and I got on the other side of my mother and he reached over. |
| Q | And, [S.M.], when we—Unfortunately, we have to go into a little bit of detail. When you say Daniel was touching you, what was he using to touch you and where was he touching you? |
| A | His finger. |
| Q | When you say "finger," whose finger? |
| A | Daniel's finger. |
| Q | Where was he touching you? |
| A | My private. |
| Q | When you say "private," do you know another name for it? |
| A | No. |
| Q | That's okay. Is it where you pee? |
| A | Yes. |

S.M. testified that Alvarado touched her twice that night, that her clothes were on at the time, and that Alvarado touched her underneath her clothes. The prosecutor then asked whether or not S.M. recalled telling Ramirez at Hope of South Texas that her clothes were off that night; S.M. stated that she did not remember that. The prosecutor continued:

| | |
|---|---|
| Q | Was there any other day he touched you? Did he touch you on any other day? |
| A | Yes. |
| Q | How many times? |

4

A           Daily.

Q           Daily?

A           Yes.

        . . . .

Q           Do you remember the touching ever getting worse?

A           Yes.

        . . . .

Q           Can you explain to the jury what happened when it got worse?

A           He put his finger in me.

Q           And, [S.M.], when you say he put his finger in you, where did he put his finger?

A           Between my legs.

Q           In your private?

A           Yes.

On cross-examination, S.M. agreed that she had previously told Ramirez that she could not remember whether Alvarado had touched her on top of or underneath her clothing. She also acknowledged that she had told Misty Rubio, a neighbor at Sage Creek Apartments, that "there was nothing going on." When defense counsel asked S.M. if "a lot of things you are saying today are things you didn't tell [Ramirez]," S.M. replied in the affirmative and explained: "I just didn't feel comfortable telling her."

The defense did not call any witnesses to testify on Alvarado's behalf. The jury subsequently found Alvarado guilty of aggravated sexual assault and indecency with a child. *See id.* §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (a)(2)(B). The trial court then sentenced Alvarado to twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice for each count, with the sentences to run concurrently. This appeal followed.

5

## II. Discussion

### A. Standard of Review

In conducting a factual sufficiency review, we consider all the evidence in a neutral light and ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008) (citing *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). The verdict will be set aside only if (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, or (2) it is against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 415 (citing *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim. App. 2000)).

Factual sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, Alvarado committed the offense of indecency with a child if (1) he engaged in sexual contact with S.M. or caused S.M. to engage in sexual contact, and (2) S.M. was younger than seventeen years of age at the time. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). Alvarado committed the offense of aggravated sexual assault if (1) he intentionally or knowingly caused the penetration of the anus or sexual organ of S.M. by any means, without her consent, and (2) S.M. was younger than fourteen years of age at the time. *See id.* § 22.021(a)(1)(B)(i), (a)(2)(B). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result; a person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(a), (b) (Vernon 2003).

### B. Analysis

Alvarado contends that the evidence was factually insufficient because "the State failed to provide credible evidence to sustain its conviction." Specifically, Alvarado notes

that S.M.'s testimony was the only direct evidence adduced as to the elements of the charged crimes, and he contends that her testimony was unreliable.

The testimony of a child victim is alone sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). The victim's description of what occurred does not need to be precise, and wide latitude is given to the testimony of a child victim of sexual abuse. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). Penetration may be proved by circumstantial evidence, and there is no requirement that the child victim be able to testify as to penetration. *Id.* at 133. Moreover, intent can be inferred from the acts, words, and conduct of the accused. *DeLeon v. State*, 77 S.W.3d 300, 312 (Tex. App.–Austin 2001, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982)). Here, S.M. testified that Alvarado touched her "private" and later "put his finger in" her "private." This testimony is sufficient, by itself, to sustain Alvarado's conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07.

Alvarado also notes that S.M.'s "testimony was vague in terms of when the alleged incidents occurred . . . and the extent of the alleged abuse." However, the State was not required to establish the exact dates that the assaults occurred, so long as the date proved "is anterior to the presentment of the indictment and within the statutory limitation period and the offense relied upon otherwise meets the description of the offense contained in the indictment." *Yzaguirre v. State*, 957 S.W.2d 38, 39 (Tex. Crim. App. 1997) (citing *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997)). The evidence established that: (1) the alleged assaults took place at the Sage Creek Apartments; (2) S.M. and her mother moved into that apartment complex around January of 2006; and (3) S.M. moved out on or about October 24, 2006, to live with her grandparents. Accordingly, the State met its burden to establish the timeframe during which the assaults occurred. *See id.*

Finally, Alvarado notes that S.M. admitted that her trial testimony included

information that she did not tell to Ramirez during her interview at Hope of South Texas. In particular, S.M. did not explicitly tell Ramirez that penetration had occurred. However, it is the jury's sole responsibility to judge the credibility of witnesses, and the jury is free to believe or disbelieve any portion of a witness's testimony. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); *Ortega v. State*, 207 S.W.3d 911, 920 (Tex. App.–Corpus Christi 2006, no pet.). Moreover, it is within the sole province of the jury to reconcile conflicts, contradictions, and inconsistencies in the evidence and testimony. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). The jury was free to resolve the apparent inconsistency between S.M.'s trial testimony and her statements to Ramirez by believing her trial testimony. *See Cain*, 958 S.W.2d at 408-09; *Ortega*, 207 S.W.3d at 920.

Viewing the entire record in a neutral light, we cannot say that the jury's verdict is clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 415. Accordingly, the jury was rationally justified in concluding, beyond a reasonable doubt, that Alvarado committed the offenses of aggravated sexual assault and indecency with a child. *See Grotti*, 273 S.W.3d at 283. We overrule Alvarado's sole issue on appeal.

### III. CONCLUSION

The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 29th day of October, 2009.

8