NUMBER 13-08-00174-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

SAUL MIRAMONTES SOTO, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 370th District Court of

Hidalgo County, Texas.

 

MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Chief Justice Valdez
 A jury found appellant, Saul Miramontes Soto, guilty of three counts of aggravated
sexual assault of a child, a first-degree felony, and one count of indecency with a child by
contact, a second-degree felony. See Tex. Penal Code Ann. §§ 22.021(a)(1)(B)(i),
(a)(1)(B)(iii), (a)(2)(B); 21.11(a)(1) (Vernon Supp. 2009). Each offense was enhanced by
a prior felony conviction, and the jury assessed punishment at seventy years' imprisonment
and a $10,000 fine on each count of aggravated sexual assault of a child and fifty years'
imprisonment and a $10,000 fine for the offense of indecency with a child by contact, to
be served concurrently. See id. §§ 12.32, 12.33, 12.42 (Vernon Supp. 2009). By six
issues, Soto contends (1) the evidence is insufficient to support his conviction for
aggravated sexual assault of a child as alleged in count three; (2) counts one, two, and four
violate the constitutional prohibition against double jeopardy; and (3) the trial court
submitted an erroneous jury charge at the guilt/innocence stage of trial. We affirm as
modified.

I. Background

A. M.G.'s Testimony

 Thirteen-year-old M.G. testified that the offenses at issue occurred in the back of
a Jeep on the morning of July 7, 2007. (1) On July 6, 2007, M.G.'s father gave her
permission to spend the night with her fifteen-year-old friend, J.P., at J.P.'s home in
Mission, Texas. Late that night, J.P. received a telephone call from her seventeen-year-old
ex-boyfriend, J.H. J.H. invited J.P. to go to South Padre Island with him, but J.P. refused. 
M.G., wanting to go to McAllen to visit her brother, I.G., asked J.P. if J.H. would drive her
there. J.H. agreed, and around 12:00 a.m. or 1:00 a.m., he arrived to pick up M.G. J.H.
was driving a white Jeep and a man, later identified as Soto, was sitting in the front
passenger seat. Soto moved to the backseat, and M.G. climbed into the front passenger
seat.

 M.G. testified that this was the first time she had ever met Soto and that he
appeared "old," "big," and "smelled like alcohol." (2) Although M.G. thought that J.H. would
take her directly to I.G.'s apartment, he drove to a convenience store, where Soto bought
cigarettes; the trio then "went cruising around." M.G. testified that she "felt scared"
because J.H. was not driving to I.G.'s apartment. M.G. told J.H. and Soto that she wanted
to go to I.G.'s apartment, but Soto responded, "Get the fuck out of here. We are going to
the island." 

 M.G. testified that J.H. drove to a green and blue house in Weslaco because he and
Soto wanted to pick up a green Mustang. (3) After arriving at the house, M.G. told J.H. that
if he did not take her to I.G.'s home, I.G. would call the police. (4) M.G. testified that Soto told
her he was not going to take her home until he could "touch" her. Soto told J.H. to get out
of the Jeep. J.H. complied and sat on a white picnic table outside of the green and blue
house. M.G. and Soto moved to the back of the Jeep, in the area behind the backseat. 
M.G. testified that Soto took off his pants, pulled down his boxers, and told her to remove
her pants and underwear. 

 M.G. testified that Soto touched her breasts underneath her clothes. M.G. refused
to kiss Soto or touch his "thing." M.G. identified her "thing" as her vagina and Soto's "thing"
as his penis. M.G. testified that Soto moved his hand "front and back" on his "thing." M.G.
laid back and Soto got on top of her and attempted to "put his thing inside [her] thing." 
M.G. stated that Soto's "thing" was "hard" and that Soto's "thing" touched her "thing" and
"kind of" went inside. M.G. also testified that Soto "put[ ] his fingers inside [her] thing." 
M.G. stated that it "hurt" when Soto's "thing" and fingers touched her "thing" and that she
tried pushing him away. M.G. testified that the encounter lasted ten to fifteen minutes. 

 After it ended, M.G. and Soto dressed, and Soto called J.H. back to the Jeep. 
When J.H. returned, M.G. called I.G. from J.H.'s phone and J.H. told I.G. that he and Soto
would drop M.G. off at the HEB grocery store in San Juan.

B. I.G.'s Testimony

 I.G. testified that at approximately 6:00 a.m. on July 7, 2007, he and two friends
arrived at the San Juan HEB. I.G. saw M.G. standing in the parking lot; I.G. testified that
M.G. looked "nervous or scared." I.G. told M.G. to get inside his vehicle, and asked,
"Where are the guys?" M.G. pointed to a white Jeep parked a few spaces away. I.G.
grabbed a stick and began hitting the Jeep. The Jeep drove away. I.G. jumped into his
vehicle and followed the Jeep as he called the police. The Jeep ran out of gas and
stopped under a nearby expressway. J.H. and Soto jumped out of the Jeep and ran to a
nearby recreational vehicle park. I.G. and his friends pursued J.H. and Soto on foot until
police arrived and apprehended J.H. and Soto for public intoxication.

 I.G. testified that he and M.G. were taken to the Pharr police station and questioned. 
At the station, M.G. told I.G. and the police that she had been sexually assaulted in the
Jeep.

C. Additional Testimony

 Hidalgo County Sheriff's Investigator Raul Cantu testified that M.G. and I.G. were
brought to his office around 11:00 a.m. or 11:30 a.m. on July 7, 2007. Cantu took M.G.'s
statement and testified that M.G. told him that Soto had used his fingers to penetrate her. 
Investigator Cantu referred M.G. to the McAllen Medical Center for collection of evidence
of sexual assault.

 Lorenza Guerrero, a sexual assault nurse examiner, testified that she conducted an
examination of M.G. around 5:00 p.m. on July 7, 2007. Guerrero testified that M.G. told
her that the alleged assault had occurred around 5:00 a.m. that same day. Guerrero's
examination revealed that M.G. was not fully physically developed and that redness
extended from M.G.'s vaginal area to her anus. Guerrero testified that although there was
no trauma to M.G.'s hymen, it was possible that a penis could have entered M.G.'s vaginal
area without causing trauma. Guerrero stated that M.G. tested positive for Chlamydia, a
sexually transmitted disease. 

 Alejandro Madrigal, Jr., a forensic scientist with the Texas Department of Public
Safety Crime Lab in McAllen, testified that vaginal and anal swabs obtained from M.G.
contained a mixture of M.G.'s DNA and the DNA of an unknown person. Madrigal testified
that testing revealed that Soto could not be excluded as a contributor to the foreign DNA
found in the swabs. Madrigal further testified that the statistics from the anal swab
revealed, to a reasonable degree of scientific certainty, that Soto was the source of the
foreign DNA.

 After the State rested, no witnesses were called by the defense. The jury found
Soto guilty of aggravated sexual assault of a child by causing his sexual organ to contact
M.G.'s sexual organ (count one), aggravated sexual assault of a child by causing his
sexual organ to penetrate M.G.'s sexual organ (count two), aggravated sexual assault of
a child by causing his finger to penetrate M.G.'s sexual organ (count three), and indecency
with a child by contact by having sexual contact with M.G.'s sexual organ (count four). The
jury assessed punishment at seventy years' imprisonment and a $10,000 fine on each
count of aggravated sexual assault of a child and fifty years' imprisonment and a $10,000
fine for the offense of indecency with a child by contact, to be served concurrently. This
appeal ensued.

II. Sufficiency of the Evidence

 In his second and third issues, Soto contends that the evidence is legally and
factually insufficient to support his conviction for sexual assault of a child by causing his
finger to penetrate the sexual organ of M.G.

A. Standards of Review and Applicable Law

 In reviewing a legal sufficiency challenge, we view the evidence in the light most
favorable to the verdict and determine whether a rational trier of fact could have found the
essential elements of a crime beyond a reasonable doubt. Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979));
Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact is the
sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Beckham v. State, 29 S.W.3d
148, 151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). A jury's verdict will be upheld
"unless a rational factfinder must have had reasonable doubt as to any essential element." 
Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We resolve any
inconsistencies in the evidence in favor of the judgment. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000). 

 In conducting a factual sufficiency review, we review the evidence in a neutral light
to determine whether the evidence is so weak that the jury's verdict seems clearly wrong
and manifestly unjust or the jury's verdict is against the great weight and preponderance
of the evidence. Grotti v. State, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008) (citing
Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006)). We will not reverse the
jury's verdict unless we can say with some objective basis in the record that the great
weight and preponderance of the evidence contradicts the verdict. Watson, 204 S.W.3d 
at 417. Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. See Curry, 30 S.W.3d at 404; Adi v. State,
94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd).

 A person commits aggravated sexual assault of a child if he intentionally or
knowingly causes the penetration of the anus or sexual organ of a child younger than
fourteen years of age by any means. See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i). 
Penetration may be proved by circumstantial evidence, and there is no requirement that
the child victim be able to testify as to penetration. Karnes v. State, 873 S.W.2d 92, 96
(Tex. App.-Dallas 1994, no pet.) (citing Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim.
App. 1992)). Moreover, the slightest penetration is sufficient to uphold a conviction if it is
proven beyond a reasonable doubt. Sherbert v. State, 531 S.W.2d 636, 637 (Tex. Crim.
App. 1976). Intent can be inferred from the acts, words, and conduct of the accused. 
DeLeon v. State, 77 S.W.3d 300, 312 (Tex. App.-Austin 2001, pet. ref'd) (citing Hernandez
v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); Dues v. State, 634 S.W.2d 304,
306 (Tex. Crim. App. 1982)).

B. Analysis

 Soto argues that the evidence is insufficient to support his conviction because M.G.
did not reveal, either during her sexual assault examination at McAllen Medical Center or
during a later interview at a child advocacy center, that Soto used his finger to penetrate
her sexual organ. Additionally, Soto argues that there is no physical evidence to support
his conviction.

 At trial, M.G. identified Soto's "thing" as his penis, and her "thing" as her vagina. 
M.G. then testified during direct examination as follows:

Q. [State] And besides his thing going inside your thing, did anything else
happen? Did he do anything else to you?


A. [M.G.] Well, he was fingering--he was fingering me.


Q. And what do you mean by "fingering" you?


A. Well, he was putting his fingers inside my thing.


 M.G. provided similar testimony during cross-examination:

Q. [Defense Counsel] Something happened in the back of that car or
the Jeep for 10 to 15 minutes. What was it that
happened? What happened?


 . . . .


A. [M.G.] Well, for 10 to 15 minutes. Well, he was just
trying to--putting his fingers inside my thing,
grabbing his thing, putting--trying to put his thing
inside my thing.


 The testimony of a child victim alone is sufficient to support a conviction for
aggravated sexual assault. See Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005);
Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); Soto v. State, 267 S.W.3d
327, 332 (Tex. App.-Corpus Christi 2008, no pet.); Ketchum v. State, 199 S.W.3d 581, 590
(Tex. App.-Corpus Christi 2006, pet. ref'd). Wide latitude is given to the testimony of a
child victim of sexual abuse. Soto, 267 S.W.2d at 332. "The victim's description of what
happened to her need not be precise, and she is not expected to express herself at the
same level of sophistication as an adult." Id. 

 The jury is responsible for judging the credibility of the witnesses, and it is free to
believe or disbelieve any portion of a witness's testimony. Cain v. State, 958 S.W.2d 404,
408-09 (Tex. Crim. App. 1997); Ortega v. State, 207 S.W.3d 911, 920 (Tex. App.-Corpus
Christi 2006, no pet.). After reviewing the evidence in the light most favorable to the
verdict, we conclude that a rational trier of fact could have found beyond a reasonable
doubt that Soto caused his finger to penetrate M.G.'s sexual organ. See Hooper, 214
S.W.3d at 13; see also Gomez v. State, No. 13-08-00157-CR, 2009 WL 2914262, at *5
(Tex. App.-Corpus Christi Aug. 31, 2009, no pet. h.) (mem. op., not designated for
publication) (concluding that evidence was legally sufficient to support appellant's
conviction of aggravated assault of a child where child victim testified that appellant
touched her on the "outside" of her sexual organ and later testified that appellant touched
"inside" her sexual organ). Furthermore, viewing the evidence in a neutral light, we
conclude that the evidence is not so weak that the jury's verdict seems clearly wrong and
manifestly unjust and that the jury's verdict is not against the great weight and
preponderance of the evidence. See Grotti, 273 S.W.3d at 283; see also Gomez, 2009
WL 2914262, at *5. Accordingly, we conclude that the evidence is factually sufficient to
support Soto's conviction. Soto's second and third issues are overruled. 

III. Double Jeopardy

 In his first issue, Soto contends that counts one, two, and four violate the
constitutional prohibition against double jeopardy. Specifically, Soto argues that count one
(aggravated sexual assault of a child by causing his sexual organ to contact M.G.'s sexual
organ) and count four (indecency with a child by contact by having sexual contact with
M.G.'s sexual organ) are lesser included offenses of count two (aggravated sexual assault
of a child by causing his sexual organ to penetrate M.G.'s sexual organ) because all three
counts arise from the same criminal episode. Although the State disagrees with Soto's
"criminal episode" argument, the State concedes that there was a double jeopardy violation
and that Soto's convictions on count one and four are subsumed into counts two and three,
respectively. 

A. Preservation

 Soto failed to raise any double jeopardy objections at trial; however, a double
jeopardy claim may be raised for the first time on appeal when the undisputed facts show
that a double jeopardy violation is clearly apparent on the face of the record and when
enforcement of the usual rules of procedural default serve no legitimate state interest. 
Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). In the present case, Soto
was tried on three counts of aggravated sexual assault and one count of indecency with
a child in the same proceeding. Therefore, the trial court knew or should have known of
a potential double jeopardy violation. Saldana v. State, 287 S.W.3d 43, 56-57 (Tex.
App.-Corpus Christi 2008, pet. ref'd). Moreover, no legitimate state interest will be served
by enforcement of the usual rules of procedural default because even if we find that a
double jeopardy violation occurred, a retrial will not be required. Id. (noting that if court
concluded that defendant received multiple convictions for the same offense, the
"conviction would merely be reformed to delete the duplicated punishment"). We therefore
review the record to determine if a double jeopardy violation occurred.

B. Analysis

 The Double Jeopardy Clause of the United States Constitution protects against
multiple punishments for the same offense. See U.S. Const. amend. V; Brown v. Ohio,
432 U.S. 161, 164 (1977); Littrell v. State, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008). 
In order to prevail on a double jeopardy claim, the record must demonstrate that the
offenses at issue necessarily arose from "one act which could be subject to two different
interpretations." Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998). "Even
when two acts are committed in close temporal proximity, the acts still may be separate
and distinct for double jeopardy purposes." Soto, 267 S.W.3d at 343. 

 Under section 22.021 of the Texas Penal Code, a person commits the offense of
aggravated sexual assault if he intentionally or knowingly causes the penetration of the
sexual organ of a child by any means, or causes the sexual organ of a child to contact or
penetrate the sexual organ of another person, including himself. See Tex. Penal Code
Ann. § 22.021(a)(1)(B)(i), (a)(1)(B)(iii). Generally, each allegation under section 22.021
constitutes a separate offense. See Vick v. State, 991 S.W.2d 830, 833 (Tex. Crim. App.
1999). However, "[s]exual contact or exposure that occurs in the course of an act of sexual
penetration is subsumed in the completed act." Soto, 267 S.W.3d at 343 (citing Patterson
v. State, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004)). Therefore, "[a] conviction for both
the act of penetration and for the sexual contact or exposure incident to the penetration
constitutes double jeopardy." Id. 

 In the present case, the jury convicted Soto of two separate offenses of aggravated
assault of a child by penetration: (1) causing his sexual organ to penetrate M.G.'s sexual
organ (count two); and (2) causing his finger to penetrate M.G.'s sexual organ (count
three). Although these offenses occurred on the same occasion, Soto's penetration of
M.G.'s sexual organ with his penis was a separate and distinct act from using his finger to
penetrate M.G.'s sexual organ. See Bottenfield v. State, 77 S.W.3d 349, 358 (Tex.
App.-Waco 2002, pet. ref'd) (holding that touching victim's sexual organ with finger was
separate and distinct from contacting her sexual organ with his penis, even when
committed during the same occurrence). Additionally, the jury convicted Soto of two acts
of contact: (1) aggravated assault of a child by causing his sexual organ to contact M.G.'s
sexual organ (count one); and (2) indecency with a child by contact (count four). The
record demonstrates that the acts of penetration were based on the same conduct as the
acts of contact. M.G. testified that while in the back of the white Jeep, Soto got on top of
her and attempted to "put his thing inside [her] thing." She also testified that Soto "put[ ]
his fingers inside [her] thing." Because a conviction for both the completed act of
penetration and for sexual contact incident to the penetration constitutes double jeopardy,
we hold that Soto was punished four times for two separate offenses. See Saldana, 287
S.W.3d at 58. We sustain Soto's first issue and delete the convictions on counts one and
four. See id.

IV. Charge Error

 In issues four, five, and six, Soto contends that the trial court submitted an
erroneous jury charge at the guilt/innocence stage of trial. Specifically, Soto contends that
the trial court commented on the weight of the evidence by attaching a "punishment"
verdict form to count one. The State contends that the proper charge was submitted to the
jury and the punishment verdict form was merely misplaced in the clerk's record.

 The clerk's record contains separate guilt/innocence and punishment charges that
were submitted to the jury. Count one's guilt/innocence charge is followed by the "Forms
of Verdict" page, which provides:

We, the Jury, find the Defendant, SAUL MIRAMONTES SOTO, GUILTY of
the offense of AGGRAVATED SEXUAL ASSAULT OF A CHILD as charged
in the indictment.


 /signed/

 PRESIDING JUROR


OR


We, the Jury find the Defendant, SAUL MIRAMONTES SOTO, NOT
GUILTY.


The next page is a verdict form for the punishment phase entitled "Verdict Form No. 2." 
The court's charge for the punishment phase appears later in the record and is
immediately followed by a page entitled "Verdict Form No. One." The punishment charge
for count one is missing Verdict Form No. 2. Review of the reporter's record reveals that
after reading count one's guilt/innocence charge to the jury, the trial court read only from
the page entitled "Forms of Verdict" before continuing on to count two of the charge. 

 We conclude that although the punishment verdict form is misplaced in the clerk's
record, a review of the entire record reveals that the trial court did not submit an erroneous
charge to the jury. Moreover, "[t]o the extent that the form of the verdict may have
constituted a comment on the weight of the evidence . . . a failure to object to an alleged
comment on the weight of the evidence also waives any review of the alleged error." 
Contreras v. State, 54 S.W.3d 898, 906 (Tex. App.-Corpus Christi, no pet.). Here, Soto
did not object to the charge on this basis. Accordingly, Soto's fourth, fifth, and sixth issues
are overruled.

V. Conclusion

 Because we conclude that the convictions under counts one and four violate the
Double Jeopardy Clause of the Fifth Amendment, we vacate the convictions on counts one
and four of the indictment and modify the trial court's judgment of conviction to reflect our
decision. See Tex. R. App. P. 43.2(b). We affirm as modified.


 ________________________

 ROGELIO VALDEZ

 Chief Justice

 

Do Not Publish. Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and filed 

this the 22nd day of October, 2009. 
1. M.G. was thirteen years old at the time of the alleged offenses; "M.G." is a pseudonym to protect
her identity. 
2. Additional testimony revealed that Soto was twenty-six years old. 
3. Later testimony revealed that the house was possibly located in Edinburg.
4. M.G. had telephoned I.G. several times that night to let him know that she was going to his
apartment.