

NUMBERS  13-07-00663-CR
13-09-00382-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOHNNA WATKINS,                                                                  **Appellant,**

**v.**

THE STATE OF TEXAS,                                                              **Appellee.**

**On appeal from the 130th District Court
of Matagorda County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides
Memorandum Opinion by Justice Garza**

Appellant, Johnna Watkins, was convicted of causing injury to a child[1] and tampering with evidence,[2] each a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 22.04, 37.09 (Vernon Supp. 2009). The trial court found Watkins to be a habitual felony offender and sentenced her to thirty-five years' imprisonment for each count, with the sentences to run concurrently. *See id.* § 12.42(d) (Vernon Supp. 2009). On appeal,

---

[1] Trial court cause number 07-201.

[2] Trial court cause number 07-202.

Watkins argues by four issues, which we characterize as two, that (1) the evidence adduced at trial was legally and factually insufficient to support her conviction for injury to a child, and (2) the evidence was legally insufficient to support her conviction for tampering with evidence. We affirm.

## I. BACKGROUND

Watkins was indicted by a Matagorda County grand jury on June 26, 2007. The two indictments alleged that Watkins: (1) intentionally or knowingly caused bodily injury to R.C., a child, "by hitting him with a wooden paddle or wooden stick"; and (2) knowing that an investigation was in progress, "intentionally or knowingly alter[ed] and destroy[ed]" the wooden paddle or stick "by burning it, with intent to impair its availability in the investigation." The indictments also included two enhancement paragraphs stating that Watkins had two prior felony convictions for forgery by passing. *See id.* § 32.21(a)(1)(B) (Vernon Supp. 2009). Watkins waived her right to a jury trial, and the case was tried before the bench on September 5, 2007.

At trial, A.R., then thirteen years old, testified that she ran away from her home in Austin, Texas, in 2007. In June of that year, A.R. came to live in Watkins's home in Markham, Texas. After having her memory refreshed by viewing a written statement she previously gave to police, A.R. testified that the following people were living at the house at the time she moved in: Watkins and her boyfriend, Macario Gonzales (whom A.R. referred to as "Ms. Johnna" and "Mr. Mack," respectively); Christina Pruitt and her boyfriend, Mark Bethancourt; and Tracy Christenson and her two-year-old son, R.C. A.R. stated that she lived in Watkins's home for only three days, but that during that time, she observed that Pruitt was primarily responsible for taking care of R.C. When the prosecutor asked A.R. whether she ever observed anything in Watkins's house that upset her, she replied in the affirmative and elaborated: "When Ms. Johnna would get a paddle and she would strike [R.C.] with it whenever he would upset her." She described the "paddle" as

2

"about a foot or a foot and a half long, and it has three holes in it, at the base and it has a little handle at the end." The exchange continued:

> Q [Prosecutor]    Okay. And who would you see get that paddle?
>
> A [A.R.]    Ms. Johnna.
>
> Q    What did you see her do with it?
>
> A    Poke [R.C.] with the end of it.
>
> Q    With the end of it?
>
> A    With the handle.
>
> Q    How did that come about? What was happening when that happened?
>
> A    [R.C.] was throwing a temper tantrum.
>
> Q    Okay. And what did you see her do?
>
> A    Hold the paddle part and poke him with the handle.

A.R. testified that this occurred in the kitchen of Watkins's house and that only she, Watkins, and R.C. were in the kitchen when this occurred. A.R. stated that Watkins "just, like, poked him [R.C.] in the lower back," and that it seemed like the "poke" hurt R.C. because he reacted to it by "crying and screaming louder" and because she later observed bruising on R.C.'s lower back.

On cross examination, A.R. acknowledged that Watkins's household "wasn't very clean" and that she did not tell anyone—such as R.C.'s mother or Pruitt, his primary caregiver—about the incident until the following day, when the police took custody of A.R. upon discovering that she had run away from home. A.R. stated that she told the police officers about what she had seen the day before because she "was concerned for [R.C.'s] safety."

Christenson testified that she lived temporarily in Watkins's house and that she regularly left R.C., a "very active" toddler, in Pruitt's care when she went to work. On the day in question, Christenson returned home to find her son's lower back bruised. When

3

Christenson asked Watkins what had happened to R.C. to cause the bruising, Watkins told her that she saw R.C. "fall on an extension cord." When the prosecutor asked for clarification as to what Watkins meant by "an extension cord," Christenson stated: "The, you know, how it has like the three prong or whatever. It has the long cord, then you can like add three more or something on the end of it. That's what [Watkins was] talking about." Christenson testified that she did not believe Watkins's story about how R.C. was injured; instead, she "thought that [Watkins] was hitting [her] son with the sticks or paddles" that were scattered around the house. On Christenson's request, Pruitt and Bethancourt hid the wooden paddles in Christenson's closet so that they would be out of Watkins's reach. Christenson testified that the paddles remained "on the top shelf" in the closet in her room as of the time she and R.C. moved out of the residence. On cross examination, Christenson stated that Watkins did not know where the paddles were hidden and was not able to reach the top shelf in her closet.

Pruitt testified that she discovered R.C.'s bruise as she and Bethancourt were giving the boy a bath. When she asked Watkins about where the bruise came from, Watkins denied causing it herself and stated that R.C. "probably got it from falling on the extension cord." Pruitt then called Christenson to let her know what she had seen. According to Pruitt, Christenson herself hid the paddles in her closet after returning to the house. Days later, after A.R. reported the incident to the police, Christenson and R.C. left the household with Gonzales to talk to investigators. Pruitt remained in the house with Bethancourt and Watkins. Pruitt testified that Watkins then "told me that this house needed to be clean . . . [because] CPS might be coming out to evaluate the household. . . . And that . . . the trash needed to be taken out." At that point, Watkins received a telephone call from Gonzales. The prosecutor then asked whether Watkins "ha[d] another conversation" with Pruitt after the telephone call ended. Pruitt responded:

> About 15, 20 minutes later she did because I was in the other part of the house helping [Bethancourt] get it clean. . . . [I came] into [Watkins's] room.

4

> I started cleaning, and I come across the wooden paddle with the holes in it. She said that needed to go out with the trash. . . . And to round up all the other back scratchers and put them in the burn barrel, burn them in the trash; and that's exactly what [Bethancourt] did. He went out and did what she asked him to do.

Pruitt confirmed on cross examination that R.C. is a "[p]retty rambunctious child" and that he sometimes "needs a spanking to calm down." On re-direct examination, Pruitt noted that she had previously seen Gonzales mistreat R.C. by "[taking] a belt to him"; Pruitt did not know where Gonzales was at the time the bruises came about on R.C.'s back.

Theresa Mendoza, an identification officer for the Matagorda County Sheriff's Office, testified that she took several photographs of the exterior of Watkins's house as part of her investigation. The photographs showed several "burn barrels" located in the backyard of Watkins's house. Mendoza testified that she dumped out the contents of one of the barrels, and that the contents included "a wooden instrument, such as a paddle with some holes in it that have gone all the way through the wood material that is kind of sticking out at the bottom." The barrel also contained another "wooden instrument" which appeared to be a "wooden back scratcher." Mendoza stated that she did not attempt to identify fingerprints on the wooden instruments, because the instruments had sustained fire damage and thus any fingerprints would "be distorted or destroyed upon brushing." On cross examination, Mendoza acknowledged that she did not know when the items were placed in the barrel or when the fire was started.

The defense rested without calling any witnesses, and the trial court subsequently found Watkins guilty of both charged offenses. The court then found the two enhancement paragraphs contained in the indictments to be true and sentenced Watkins to thirty-five years' imprisonment for each count, with the sentences to run concurrently. These appeals followed.[3]

---

[3] Watkins filed a notice of appeal on October 17, 2007 in trial court cause number 07-201 (appellate cause number 13-07-00663-CR). On May 11, 2009, upon discovering that a notice of appeal had mistakenly not been filed in trial court cause number 07-202, Watkins's counsel filed a motion with this Court to abate

## II. Standard of Review and Applicable Law

We review the legal and factual sufficiency of the evidence supporting a conviction under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The verdict will be set aside only if (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, or (2) it is against the great weight and preponderance of the evidence. *Id.* at 415 (citing *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim. App. 2000)).

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, Watkins committed the offense of

---

the pending appeal and to extend the time to file a brief. We granted the motion on June 25, 2009, and rendered an order directing counsel to file an amended notice of appeal encompassing both trial court cause numbers. *See* TEX. R. APP. P. 25.2(f). Counsel complied on July 7, 2009, filing an amended notice of appeal with respect to both trial court cause numbers 07-201 and 07-202 (appellate cause number 13-09-00382-CR). We consolidated the two appeals and consider them together here.

6

causing injury to a child if she: (1) intentionally or knowingly (2) caused bodily injury to R.C, and (3) R.C. was then fourteen years of age or younger. Tex. Penal Code Ann. § 22.04(a), (c)(1). A person acts intentionally with respect to a result of her conduct when it is her conscious objective or desire to cause the result. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly with respect to the result of her conduct when she is aware that her conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Under a hypothetically correct jury charge, Watkins committed the offense of tampering with evidence if she: (1) knew that an investigation or official proceeding was pending or in progress; and (2) altered or destroyed any record, document, or thing (3) with intent to impair its verity, legibility, or availability as evidence. *Id.* § 37.09.

## III. Discussion

### A. Injury to a Child

By her first issue, Watkins argues that the evidence was legally and factually insufficient to support her conviction for injury to a child. Specifically, she contends that the evidence was insufficient to support a finding that (1) she was the individual who committed the offense, or (2) that she acted intentionally or knowingly in doing so. We disagree.

Watkins's sufficiency challenge is based primarily on the fact that only one witness, A.R., testified as to any personal knowledge of how R.C.'s bruises came about. Watkins argues that "[t]he only evidence of any [criminal] conduct is that of a runaway," and suggests that the trial court could not have relied solely on that testimony in reaching its conclusion. However, it is the fact finder's sole responsibility to judge the credibility of witnesses, and the fact finder is free to believe or disbelieve any portion of a witness's testimony. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); *Ortega v. State*, 207 S.W.3d 911, 920 (Tex. App.–Corpus Christi 2006, no pet.). The mere fact that A.R. ran away from home at some point in her past does not render her testimony invalid or

7

ineligible to support a conviction. Here, a rational trier of fact could have believed A.R.'s testimony that Watkins "poked" R.C. with the wooden paddle and could have disbelieved Watkins's testimony that the child instead suffered his bruises as a result of falling on an "extension cord."

Watkins also asserts that there was "no evidence that [she] intended to harm the child," noting that A.R.'s testimony "did not reveal that Watkins intentionally hit the child with a paddle, only that she 'poked' the child one time." However, it is well established that intent may be inferred from circumstantial evidence. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003); *King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000) ("The fact that appellant was convicted upon circumstantial evidence does not, in itself, require reversal of the conviction under either our legal or factual sufficiency analyses."). Due deference must be accorded to the fact finder regarding the weight and credibility of the evidence. *See Jones v. State*, 944 S.W.2d 642, 649 (Tex. Crim. App. 1996). Here, A.R. testified that R.C. started "crying and screaming louder" after being "poked," and A.R., Christenson, and Pruitt all testified that bruises appeared on R.C.'s lower back shortly after the incident. Moreover, although A.R. gave specific testimony about only one instance of abuse, she also stated generally that Watkins "would strike [R.C.] with [the paddle] whenever he would upset her." The circumstantial evidence adduced at trial was enough to allow a rational trier of fact to conclude by inference that Watkins possessed the requisite culpable mental state. *See* Tex. Penal Code Ann. § 22.04(a); *Guevara*, 152 S.W.3d at 50; *Brown*, 122 S.W.3d at 800.[4]

---

[4] Watkins also notes in her evidentiary sufficiency argument that "no medical witnesses testified" and "there was no testimony by the investigating officers that they were unable to recreate an accidental occurrence based on appellant's description of the incident to the other witnesses." However, the State was under no obligation to produce such evidence. *See Geesa v. State*, 820 S.W.2d 154, 157-61 (Tex. Crim. App. 1991) (rejecting the "reasonable hypothesis analytical construct" under which courts were required to instruct juries not to convict on circumstantial evidence unless "every reasonable hypothesis other than guilt" is excluded), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000); *Boone v. State*, 689 S.W.2d 467, 468 (Tex. Crim. App. 1985) (noting that medical evidence is not necessary for a conviction).

Considering the evidence in the light most favorable to the verdict, we conclude that the evidence was legally sufficient to support Watkins's conviction for causing injury to a child. *See Sanders*, 119 S.W.3d at 820. Additionally, viewing the evidence in a neutral light, we cannot say that the verdict was so contrary to the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *See Watson*, 204 S.W.3d at 415. Watkins's first issue is overruled.

**B.     Tampering With Evidence**

By her second issue, Watkins contends that the evidence was legally insufficient to support her conviction for tampering with evidence. Specifically, she argues that the evidence was insufficient to show: (1) that an investigation was in progress in which the paddle might have served as evidence or (2) that she knew that the paddle was evidence in the investigation. She relies on *Pannell v. State*, 7 S.W.3d 222, 223-24 (Tex. App.–Dallas 1999, pet. ref'd), in which the Dallas Court of Appeals reversed a conviction for tampering with evidence when the appellant threw marihuana out of a car window while being pursued by police. *Id.* In *Pannell*, the court found the evidence to be legally insufficient to support a finding that the appellant knew that an investigation was in progress, because the police in pursuit of appellant were "investigating only a speeding violation at the time appellant threw the mari[h]uana out his car window." *Id.* at 224. The court stated that "[t]here is no evidence that an investigation *in which the mari[h]uana would serve as evidence* was pending or in progress [at the time appellant destroyed evidence]." *Id.* (emphasis added). Watkins urges that the same result should obtain here. We disagree. First, the Texas Court of Criminal Appeals has recently criticized *Pannell*, noting that it "grafts a fourth element onto section 37.09(a)(1) [of the penal code]" that is not supported by a narrow reading of the statute. *Williams v. State*, 270 S.W.3d 140, 144 (Tex. Crim. App. 2008). Second, even if we were to follow *Pannell*, the facts established at trial show that Watkins's case is not analogous. The evidence showed that the following

events occurred in chronological order: (1) A.R. saw Watkins "poke" R.C. with a wooden paddle; (2) Christenson, R.C.'s mother, came home to confront Watkins about R.C.'s bruises; (3) the police took Christenson and R.C., accompanied by Gonzales, in for questioning; (4) Watkins told Pruitt to clean the house and take out the trash because "CPS might be coming out to evaluate the household"; (5) Gonzales spoke to Watkins by phone[5]; (6) Watkins directed Pruitt to "round up" all the paddles and "burn them in the trash"; and (7) Bethancourt burned the paddles. Viewing the evidence in the light most favorable to the verdict, *see Sanders*, 119 S.W.3d at 820, we find that the evidence was sufficient to support a finding that Watkins knew that an investigation was in progress in which the paddles may have served as evidence.

Watkins additionally argues that the evidence was legally insufficient to support a finding that she "destroyed" the wooden paddle. *See Spector v. State*, 746 S.W.2d 945, 946 (Tex. App.–Austin 1988, no pet.) ("[S]omething is destroyed within the meaning of [penal code section] 37.09(a)(1) when its evidentiary value is destroyed.") However, the statute does not require that the State prove she "destroyed" the paddle; rather, it requires a showing that she "alter[ed], destroy[ed], or conceal[ed]" the paddle with the requisite intent. Here, the indictment relating to the tampering with evidence charge alleged that Watkins "did intentionally or knowingly alter and destroy evidence, to-wit: a wooden paddle . . . ." Although Watkins argues that the evidence does not support a finding that she "destroy[ed]" the paddle, she does not dispute that the evidence did support a finding that she "alter[ed]" the paddle by asking Pruitt to burn it. Therefore, the evidence was legally sufficient to support this element of the crime. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (noting that "although the indictment may allege the differing

---

[5] Watkins notes that she told Pruitt that "the trash needed to be taken out" *before* she spoke to Gonzales, and therefore that she could not have known that an investigation was in progress at the time she directed Pruitt to dispose of the paddles. However, Pruitt specifically testified that Watkins had another conversation with her *after* Gonzales's telephone call, and it was in that second conversation that Watkins told Pruitt to "round up" the paddles and "burn them in the trash."

methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive" and "[i]t is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted.").

We conclude that a rational trier of fact could have found beyond a reasonable doubt that Watkins knew an investigation was in progress and altered or destroyed the wooden paddle with intent to impair is availability in the investigation. *See* TEX. PENAL CODE ANN. § 37.09. Accordingly, the evidence was legally sufficient to support Watkins's conviction for tampering with evidence. We overrule Watkins's second issue.

## IV. CONCLUSION

We affirm the judgments of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
25th day of February, 2010.

11