NUMBERS 13-07-00663-CR 


 13-09-00382-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JOHNNA WATKINS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 130th District Court


of Matagorda County, Texas.

 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Benavides


Memorandum Opinion by Justice Garza



 Appellant, Johnna Watkins, was convicted of causing injury to a child (1) and
tampering with evidence, (2) each a third-degree felony. See Tex. Penal Code Ann. §§
22.04, 37.09 (Vernon Supp. 2009). The trial court found Watkins to be a habitual felony
offender and sentenced her to thirty-five years' imprisonment for each count, with the
sentences to run concurrently. See id. § 12.42(d) (Vernon Supp. 2009). On appeal,
Watkins argues by four issues, which we characterize as two, that (1) the evidence
adduced at trial was legally and factually insufficient to support her conviction for injury to
a child, and (2) the evidence was legally insufficient to support her conviction for tampering
with evidence. We affirm.

I. Background

 Watkins was indicted by a Matagorda County grand jury on June 26, 2007. The two
indictments alleged that Watkins: (1) intentionally or knowingly caused bodily injury to
R.C., a child, "by hitting him with a wooden paddle or wooden stick"; and (2) knowing that
an investigation was in progress, "intentionally or knowingly alter[ed] and destroy[ed]" the
wooden paddle or stick "by burning it, with intent to impair its availability in the
investigation." The indictments also included two enhancement paragraphs stating that
Watkins had two prior felony convictions for forgery by passing. See id. § 32.21(a)(1)(B)
(Vernon Supp. 2009). Watkins waived her right to a jury trial, and the case was tried
before the bench on September 5, 2007.

 At trial, A.R., then thirteen years old, testified that she ran away from her home in
Austin, Texas, in 2007. In June of that year, A.R. came to live in Watkins's home in
Markham, Texas. After having her memory refreshed by viewing a written statement she
previously gave to police, A.R. testified that the following people were living at the house
at the time she moved in: Watkins and her boyfriend, Macario Gonzales (whom A.R.
referred to as "Ms. Johnna" and "Mr. Mack," respectively); Christina Pruitt and her
boyfriend, Mark Bethancourt; and Tracy Christenson and her two-year-old son, R.C. A.R.
stated that she lived in Watkins's home for only three days, but that during that time, she
observed that Pruitt was primarily responsible for taking care of R.C. When the prosecutor
asked A.R. whether she ever observed anything in Watkins's house that upset her, she
replied in the affirmative and elaborated: "When Ms. Johnna would get a paddle and she
would strike [R.C.] with it whenever he would upset her." She described the "paddle" as
"about a foot or a foot and a half long, and it has three holes in it, at the base and it has a
little handle at the end." The exchange continued:

Q [Prosecutor] Okay. And who would you see get that paddle?


A [A.R.] Ms. Johnna.


Q What did you see her do with it?


A Poke [R.C.] with the end of it.


Q With the end of it?


A With the handle.


Q How did that come about? What was happening when
that happened?


A [R.C.] was throwing a temper tantrum.


Q Okay. And what did you see her do?


A Hold the paddle part and poke him with the handle.


A.R. testified that this occurred in the kitchen of Watkins's house and that only she,
Watkins, and R.C. were in the kitchen when this occurred. A.R. stated that Watkins "just,
like, poked him [R.C.] in the lower back," and that it seemed like the "poke" hurt R.C.
because he reacted to it by "crying and screaming louder" and because she later observed
bruising on R.C.'s lower back.

 On cross examination, A.R. acknowledged that Watkins's household "wasn't very
clean" and that she did not tell anyone--such as R.C.'s mother or Pruitt, his primary
caregiver--about the incident until the following day, when the police took custody of A.R.
upon discovering that she had run away from home. A.R. stated that she told the police
officers about what she had seen the day before because she "was concerned for [R.C.'s]
safety."

 Christenson testified that she lived temporarily in Watkins's house and that she
regularly left R.C., a "very active" toddler, in Pruitt's care when she went to work. On the
day in question, Christenson returned home to find her son's lower back bruised. When
Christenson asked Watkins what had happened to R.C. to cause the bruising, Watkins told
her that she saw R.C. "fall on an extension cord." When the prosecutor asked for
clarification as to what Watkins meant by "an extension cord," Christenson stated: "The,
you know, how it has like the three prong or whatever. It has the long cord, then you can
like add three more or something on the end of it. That's what [Watkins was] talking
about." Christenson testified that she did not believe Watkins's story about how R.C. was
injured; instead, she "thought that [Watkins] was hitting [her] son with the sticks or paddles"
that were scattered around the house. On Christenson's request, Pruitt and Bethancourt
hid the wooden paddles in Christenson's closet so that they would be out of Watkins's
reach. Christenson testified that the paddles remained "on the top shelf" in the closet in
her room as of the time she and R.C. moved out of the residence. On cross examination,
Christenson stated that Watkins did not know where the paddles were hidden and was not
able to reach the top shelf in her closet.

 Pruitt testified that she discovered R.C.'s bruise as she and Bethancourt were giving
the boy a bath. When she asked Watkins about where the bruise came from, Watkins
denied causing it herself and stated that R.C. "probably got it from falling on the extension
cord." Pruitt then called Christenson to let her know what she had seen. According to
Pruitt, Christenson herself hid the paddles in her closet after returning to the house. Days
later, after A.R. reported the incident to the police, Christenson and R.C. left the household
with Gonzales to talk to investigators. Pruitt remained in the house with Bethancourt and
Watkins. Pruitt testified that Watkins then "told me that this house needed to be
clean . . . [because] CPS might be coming out to evaluate the household. . . . And
that . . . the trash needed to be taken out." At that point, Watkins received a telephone call
from Gonzales. The prosecutor then asked whether Watkins "ha[d] another conversation"
with Pruitt after the telephone call ended. Pruitt responded:

About 15, 20 minutes later she did because I was in the other part of the
house helping [Bethancourt] get it clean. . . . [I came] into [Watkins's] room. 
I started cleaning, and I come across the wooden paddle with the holes in it. 
She said that needed to go out with the trash. . . . And to round up all the
other back scratchers and put them in the burn barrel, burn them in the trash;
and that's exactly what [Bethancourt] did. He went out and did what she
asked him to do.


 Pruitt confirmed on cross examination that R.C. is a "[p]retty rambunctious child" and
that he sometimes "needs a spanking to calm down." On re-direct examination, Pruitt
noted that she had previously seen Gonzales mistreat R.C. by "[taking] a belt to him"; Pruitt
did not know where Gonzales was at the time the bruises came about on R.C.'s back.

 Theresa Mendoza, an identification officer for the Matagorda County Sheriff's Office,
testified that she took several photographs of the exterior of Watkins's house as part of her
investigation. The photographs showed several "burn barrels" located in the backyard of
Watkins's house. Mendoza testified that she dumped out the contents of one of the
barrels, and that the contents included "a wooden instrument, such as a paddle with some
holes in it that have gone all the way through the wood material that is kind of sticking out
at the bottom." The barrel also contained another "wooden instrument" which appeared
to be a "wooden back scratcher." Mendoza stated that she did not attempt to identify
fingerprints on the wooden instruments, because the instruments had sustained fire
damage and thus any fingerprints would "be distorted or destroyed upon brushing." On
cross examination, Mendoza acknowledged that she did not know when the items were
placed in the barrel or when the fire was started.

 The defense rested without calling any witnesses, and the trial court subsequently
found Watkins guilty of both charged offenses. The court then found the two enhancement
paragraphs contained in the indictments to be true and sentenced Watkins to thirty-five
years' imprisonment for each count, with the sentences to run concurrently. These appeals
followed. (3)

II. Standard of Review and Applicable Law

 We review the legal and factual sufficiency of the evidence supporting a conviction
under well-established standards. In conducting a legal sufficiency review, we consider the
evidence in the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We must give deference
to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts." Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307,
318-19 (1979)). We are not required to determine whether we believe that the evidence
at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting
evidence, we must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution. State v. Turro, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993). In conducting a factual sufficiency review, we consider the evidence in
a neutral light. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The
verdict will be set aside only if (1) it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and manifestly unjust, or (2) it is against the great weight
and preponderance of the evidence. Id. at 415 (citing Johnson v. State, 23 S.W.3d 1, 10
(Tex. Crim. App. 2000)).

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet.
ref'd). Under a hypothetically correct jury charge, Watkins committed the offense of
causing injury to a child if she: (1) intentionally or knowingly (2) caused bodily injury to R.C,
and (3) R.C. was then fourteen years of age or younger. Tex. Penal Code Ann. § 22.04(a),
(c)(1). A person acts intentionally with respect to a result of her conduct when it is her
conscious objective or desire to cause the result. Id. § 6.03(a) (Vernon 2003). A person
acts knowingly with respect to the result of her conduct when she is aware that her conduct
is reasonably certain to cause the result. Id. § 6.03(b). Under a hypothetically correct jury
charge, Watkins committed the offense of tampering with evidence if she: (1) knew that
an investigation or official proceeding was pending or in progress; and (2) altered or
destroyed any record, document, or thing (3) with intent to impair its verity, legibility, or
availability as evidence. Id. § 37.09.

III. Discussion

A. Injury to a Child

 By her first issue, Watkins argues that the evidence was legally and factually
insufficient to support her conviction for injury to a child. Specifically, she contends that
the evidence was insufficient to support a finding that (1) she was the individual who
committed the offense, or (2) that she acted intentionally or knowingly in doing so. We
disagree.

 Watkins's sufficiency challenge is based primarily on the fact that only one witness,
A.R., testified as to any personal knowledge of how R.C.'s bruises came about. Watkins
argues that "[t]he only evidence of any [criminal] conduct is that of a runaway," and
suggests that the trial court could not have relied solely on that testimony in reaching its
conclusion. However, it is the fact finder's sole responsibility to judge the credibility of
witnesses, and the fact finder is free to believe or disbelieve any portion of a witness's
testimony. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); Ortega v. State,
207 S.W.3d 911, 920 (Tex. App.-Corpus Christi 2006, no pet.). The mere fact that A.R.
ran away from home at some point in her past does not render her testimony invalid or
ineligible to support a conviction. Here, a rational trier of fact could have believed A.R.'s
testimony that Watkins "poked" R.C. with the wooden paddle and could have disbelieved
Watkins's testimony that the child instead suffered his bruises as a result of falling on an
"extension cord."

 Watkins also asserts that there was "no evidence that [she] intended to harm the
child," noting that A.R.'s testimony "did not reveal that Watkins intentionally hit the child
with a paddle, only that she 'poked' the child one time." However, it is well established that
intent may be inferred from circumstantial evidence. See Guevara v. State, 152 S.W.3d
45, 50 (Tex. Crim. App. 2004); Brown v. State, 122 S.W.3d 794, 800 (Tex. Crim. App.
2003); King v. State, 29 S.W.3d 556 (Tex. Crim. App. 2000) ("The fact that appellant was
convicted upon circumstantial evidence does not, in itself, require reversal of the conviction
under either our legal or factual sufficiency analyses."). Due deference must be accorded
to the fact finder regarding the weight and credibility of the evidence. See Jones v. State,
944 S.W.2d 642, 649 (Tex. Crim. App. 1996). Here, A.R. testified that R.C. started "crying
and screaming louder" after being "poked," and A.R., Christenson, and Pruitt all testified
that bruises appeared on R.C.'s lower back shortly after the incident. Moreover, although
A.R. gave specific testimony about only one instance of abuse, she also stated generally
that Watkins "would strike [R.C.] with [the paddle] whenever he would upset her." The
circumstantial evidence adduced at trial was enough to allow a rational trier of fact to
conclude by inference that Watkins possessed the requisite culpable mental state. See
Tex. Penal Code Ann. § 22.04(a); Guevara, 152 S.W.3d at 50; Brown, 122 S.W.3d at 800. (4)

 Considering the evidence in the light most favorable to the verdict, we conclude that
the evidence was legally sufficient to support Watkins's conviction for causing injury to a
child. See Sanders, 119 S.W.3d at 820. Additionally, viewing the evidence in a neutral
light, we cannot say that the verdict was so contrary to the great weight and preponderance
of the evidence as to be clearly wrong or manifestly unjust. See Watson, 204 S.W.3d at
415. Watkins's first issue is overruled.

B. Tampering With Evidence

 By her second issue, Watkins contends that the evidence was legally insufficient to
support her conviction for tampering with evidence. Specifically, she argues that the
evidence was insufficient to show: (1) that an investigation was in progress in which the
paddle might have served as evidence or (2) that she knew that the paddle was evidence
in the investigation. She relies on Pannell v. State, 7 S.W.3d 222, 223-24 (Tex.
App.-Dallas 1999, pet. ref'd), in which the Dallas Court of Appeals reversed a conviction
for tampering with evidence when the appellant threw marihuana out of a car window while
being pursued by police. Id. In Pannell, the court found the evidence to be legally
insufficient to support a finding that the appellant knew that an investigation was in
progress, because the police in pursuit of appellant were "investigating only a speeding
violation at the time appellant threw the mari[h]uana out his car window." Id. at 224. The
court stated that "[t]here is no evidence that an investigation in which the mari[h]uana
would serve as evidence was pending or in progress [at the time appellant destroyed
evidence]." Id. (emphasis added). Watkins urges that the same result should obtain here. 
We disagree. First, the Texas Court of Criminal Appeals has recently criticized Pannell,
noting that it "grafts a fourth element onto section 37.09(a)(1) [of the penal code]" that is
not supported by a narrow reading of the statute. Williams v. State, 270 S.W.3d 140, 144
(Tex. Crim. App. 2008). Second, even if we were to follow Pannell, the facts established
at trial show that Watkins's case is not analogous. The evidence showed that the following
events occurred in chronological order: (1) A.R. saw Watkins "poke" R.C. with a wooden
paddle; (2) Christenson, R.C.'s mother, came home to confront Watkins about R.C.'s
bruises; (3) the police took Christenson and R.C., accompanied by Gonzales, in for
questioning; (4) Watkins told Pruitt to clean the house and take out the trash because
"CPS might be coming out to evaluate the household"; (5) Gonzales spoke to Watkins by
phone (5); (6) Watkins directed Pruitt to "round up" all the paddles and "burn them in the
trash"; and (7) Bethancourt burned the paddles. Viewing the evidence in the light most
favorable to the verdict, see Sanders, 119 S.W.3d at 820, we find that the evidence was
sufficient to support a finding that Watkins knew that an investigation was in progress in
which the paddles may have served as evidence.

 Watkins additionally argues that the evidence was legally insufficient to support a
finding that she "destroyed" the wooden paddle. See Spector v. State, 746 S.W.2d 945,
946 (Tex. App.-Austin 1988, no pet.) ("[S]omething is destroyed within the meaning of
[penal code section] 37.09(a)(1) when its evidentiary value is destroyed.") However, the
statute does not require that the State prove she "destroyed" the paddle; rather, it requires
a showing that she "alter[ed], destroy[ed], or conceal[ed]" the paddle with the requisite
intent. Here, the indictment relating to the tampering with evidence charge alleged that
Watkins "did intentionally or knowingly alter and destroy evidence, to-wit: a wooden paddle
. . . ." Although Watkins argues that the evidence does not support a finding that she
"destroy[ed]" the paddle, she does not dispute that the evidence did support a finding that
she "alter[ed]" the paddle by asking Pruitt to burn it. Therefore, the evidence was legally
sufficient to support this element of the crime. See Kitchens v. State, 823 S.W.2d 256, 258
(Tex. Crim. App. 1991) (noting that "although the indictment may allege the differing
methods of committing the offense in the conjunctive, it is proper for the jury to be charged
in the disjunctive" and "[i]t is appropriate where the alternate theories of committing the
same offense are submitted to the jury in the disjunctive for the jury to return a general
verdict if the evidence is sufficient to support a finding under any of the theories
submitted.").

 We conclude that a rational trier of fact could have found beyond a reasonable
doubt that Watkins knew an investigation was in progress and altered or destroyed the
wooden paddle with intent to impair is availability in the investigation. See Tex. Penal
Code Ann. § 37.09. Accordingly, the evidence was legally sufficient to support Watkins's
conviction for tampering with evidence. We overrule Watkins's second issue.

IV. Conclusion

 We affirm the judgments of the trial court.


 

 DORI CONTRERAS GARZA,

 Justice



Do not publish. 

Tex. R. App. P. 47.2(b).

Delivered and filed the

25th day of February, 2010.
1. Trial court cause number 07-201.
2. Trial court cause number 07-202.
3. Watkins filed a notice of appeal on October 17, 2007 in trial court cause number 07-201 (appellate
cause number 13-07-00663-CR). On May 11, 2009, upon discovering that a notice of appeal had mistakenly
not been filed in trial court cause number 07-202, Watkins's counsel filed a motion with this Court to abate
the pending appeal and to extend the time to file a brief. We granted the motion on June 25, 2009, and
rendered an order directing counsel to file an amended notice of appeal encompassing both trial court cause
numbers. See Tex. R. App. P. 25.2(f). Counsel complied on July 7, 2009, filing an amended notice of appeal
with respect to both trial court cause numbers 07-201 and 07-202 (appellate cause number 13-09-00382-CR). 
We consolidated the two appeals and consider them together here.
4. Watkins also notes in her evidentiary sufficiency argument that "no medical witnesses testified" and
"there was no testimony by the investigating officers that they were unable to recreate an accidental
occurrence based on appellant's description of the incident to the other witnesses." However, the State was
under no obligation to produce such evidence. See Geesa v. State, 820 S.W.2d 154, 157-61 (Tex. Crim. App.
1991) (rejecting the "reasonable hypothesis analytical construct" under which courts were required to instruct
juries not to convict on circumstantial evidence unless "every reasonable hypothesis other than guilt" is
excluded), overruled on other grounds by Paulson v. State, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000);
Boone v. State, 689 S.W.2d 467, 468 (Tex. Crim. App. 1985) (noting that medical evidence is not necessary
for a conviction).
5. Watkins notes that she told Pruitt that "the trash needed to be taken out" before she spoke to
Gonzales, and therefore that she could not have known that an investigation was in progress at the time she
directed Pruitt to dispose of the paddles. However, Pruitt specifically testified that Watkins had another
conversation with her after Gonzales's telephone call, and it was in that second conversation that Watkins told
Pruitt to "round up" the paddles and "burn them in the trash."