

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00479-CR

Victoria Lavigne **VALDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CR-9440
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:   Velia J. Meza, Justice

Sitting:        Irene Rios, Justice
                H. Todd McCray, Justice
                Velia J. Meza, Justice

Delivered and Filed: August 6, 2025

AFFIRMED

Victoria Valdez appeals her conviction for assault of a peace officer, a second-degree felony. On appeal, she contends that the evidence was legally insufficient to support the jury's finding that she committed the offense and argues that Officer Holguin was not lawfully discharging an official duty at the time of the alleged assault. We affirm.

**BACKGROUND**

On November 3, 2021, Officer Holguin of the Converse Police Department responded to a report of a family disturbance on Margarita Hill. The caller alleged that multiple items of property had been damaged and expressed concern that Victoria Valdez posed a potential danger to herself and others.

Upon arrival, Officer Holguin contacted the caller, Michael Montgomery. Montgomery advised that he owned the residence, and that Valdez, his ex-wife, was temporarily living with him. Shortly thereafter, Officer Lozano arrived, and both officers entered Montgomery's residence. While inside, the officers observed clothing and furniture in disarray, along with a broken light switch. Montgomery alerted to Officer Lozano that Valdez had expressed she "hated her life," and immediately injured herself by striking her head against the light switch, breaking it and leaving it bloodstained. Based on the information provided, Officer Lozano advised Officer Holguin that Valdez needed to be held under an emergency detention.

The officers proceeded to Montgomery's backyard to make contact with Valdez. It is unclear from the record where in the backyard Valdez was when the officers first encountered her. Regardless, the officers ultimately found themselves outside of a pitched tent in the backyard that Valdez occupied. Officer Holguin, in seeking to deescalate the situation, grabbed Valdez's hand, asked her to calm down, and ordered her to exit the tent. Valdez refused. After repeatedly ignoring the officers' instructions to exit her tent, Officer Lozano stated: "Okay. It's time, you know, to place her in an emergency detention."

The officers initially attempted to remove Valdez from the tent and place her in handcuffs; however, she resisted their efforts. The officers then "grabb[ed Valdez's] hands and put[] her on the ground," but again Valdez resisted. In resisting their efforts, Valdez kicked Officer Holguin,

striking his left kneecap multiple times. After being struck, Officer Holguin lost his balance and due to the pain, was forced to disengage from trying to handcuff Valdez. Officer Lozano, now acting alone, was able to handcuff and restrain Valdez.

While escorting Valdez through Montgomery's residence to their patrol vehicle, Valdez again put up resistance and grabbed hold of a metal coat stand with her legs. Concerned for their safety, Valdez was placed on the floor so the officers could regain control of the situation. At that moment, Valdez bit Officer Holguin on the right calf, resulting in visible bruising and an open wound. Officer Lozano regained control of Valdez and requested backup officers. Eventually Officer Talamantes arrived on scene, and Valdez was finally placed in a patrol vehicle.

Valdez was charged with assault of a peace officer and convicted following a jury trial.

## ANALYSIS

### 1. Standard of Review

When conducting a legal sufficiency review, "the duty of the reviewing court is simply to ensure that the evidence presented supports the jury's verdict and that the state has presented a legally sufficient case of the offense charged." *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Under the legal sufficiency test, we view all the evidence in "light most favorable to the verdict" and determine whether the jury could have reasonably reached its verdict. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The Court of Criminal Appeals has emphasized that each piece of evidence need not directly and independently point to the guilt of the defendant. *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020). Rather, the combined effect of the evidence is sufficient to support a conviction. *Id*. And we are required to defer to the jury's determination of the weight and credibility of the evidence, since it is not our duty to realign the jury's resolution. *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010).

Valdez's sole issue is that the evidence presented at trial was legally insufficient to support her conviction. She argues that Officer Holguin was not lawfully discharging an official duty since he did not manifest his purpose to arrest pursuant to section 9.51 of the Texas Penal Code and he failed to comply with section 573.001(g) of the Texas Health Code when effectuating the emergency detention. We disagree.

2.  Officer Holguin Was Lawfully Discharging an Official Duty

Pursuant to the Texas Penal Code, a person commits the offense of assault of a peace officer when they intentionally, knowingly, or recklessly cause bodily injury to another and the actor knows that the individual is a peace officer, "while the officer . . . is lawfully discharging an official duty." TEX. PEN. CODE § 22.01(a)(1), (b–2). "[T]he phrase 'lawful discharge of an official duty' is not statutorily defined, but it does have an ordinary meaning that jurors can apply using their own common sense." *Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (footnote omitted). Nevertheless, an element which the State must prove beyond a reasonable doubt is that the assaulted peace officer was "lawfully discharging an official duty." TEX. PEN. CODE § 22.01(b–2). Therefore, we must address whether the evidence is legally sufficient to support that Officer Holguin was lawfully discharging an official duty when Valdez assaulted him.

Texas courts have consistently interpreted "lawfully discharging an official duty" to mean "that the [peace officer] is not criminally or tortiously abusing his office . . . by acts of . . . official oppression or violations of the civil rights of a person in custody or the use of unlawful unjustified force." *Hall v. State*, 158 S.W.3d 470, 474 (Tex. Crim. App. 2005).

An officer is acting within the lawful discharge of his official duty when making an arrest whether or not in hindsight the arrest was lawful or in excess of the officer's authority. *Montoya v. State*, 744 S.W.2d 15, 29 (Tex. Crim. App. 1987), *overruled on other grounds by Cockrell v.*

*State*, 933 S.W.2d 73 (Tex. Crim. App. 1996). Furthermore, courts have emphasized that an arrestee's awareness of whether "the officer was lawfully discharging an official duty is unnecessary." *Salazar v. State*, 643 S.W.2d 953, 956 (Tex. Crim. App. 1983).

Instead, the entire encounter is considered when determining whether an officer lawfully discharged an official duty, including "whether the police officer was in uniform, on duty, and whether [he] was on regular patrol at the time of the assault." *Hall*, 158 S.W.3d at 474.

### 2.1 The Evidence is Legally Sufficient to Support Officer Holguin Was Lawfully Discharging an Official Duty When Valdez Bit Him

Valdez contends that Officer Holguin's failure to manifest his purpose to arrest prior to using force violated section 9.51 of the Texas Penal Code and rendered the discharge of his official duty unlawful.

Section 9.51 of the Texas Penal Code provides in relevant part:

(a) A peace officer is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make an arrest or search if:

(1) the actor reasonably believes the arrest or search is lawful; and

(2) before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested.

TEX. PEN. CODE § 9.51(a)(1)–(2). Interestingly, this statute falls within chapter 9 of the Texas Penal Code governing "defenses to prosecution [if] the conduct in question is justified under this chapter." *Id*. § 9.02.

Section 9.51 is not strictly an element of assault of a peace officer. That said, our sister court has observed that a "peace officer's justification for using force . . . is inextricably intertwined with the issue of whether the officer was lawfully discharging his official duty."

*Coltart v. State*, No. 13-22-00527-CR, 2024 WL 5199218, at \*3 (Tex. App.—Corpus Christi–Edinburg Dec. 19, 2024, pet. ref'd) (mem. op., not designated for publication). However, section 9.51 is only applicable in situations where an officer is conducting an arrest or search. *See Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 791 (Tex. App.—El Paso 1996, writ denied) (holding that section 9.51 justification for use of force only applies to "situations in which the peace officer is attempting to effectuate the arrest of an individual," which is "[a]t best . . . a fact issue.").

In this case, Officer Holguin testified that when he initially used force, he was not arresting Valdez but rather placing her under an emergency detention. Thus, section 9.51 provides no justification for force since neither an arrest nor search were effectuated. However, "[i]t is the duty of every peace officer to preserve the peace within the officer's jurisdiction. To effect this purpose, the officer shall use all lawful means." TEX. CODE CRIM. PRO. art 2.13(a). And although analyzed in the context of the Fourth Amendment, the Supreme Court has stated that an officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997) (holding that officers are justified in using reasonable force "to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety."). Thus, Valdez's argument raises an interesting question: Does section 9.51 control when evaluating an officer's use of force when effectuating an emergency detention? The answer to this question must wait for another day.

Appellate courts must uphold the trial court's judgment if the evidence is sufficient to support a finding of guilt under any alternative theory presented to the jury. *Garza Vega v. State*, 267 S.W.3d 912, 915–16 (Tex. Crim. App. 2008). Here, the jury was presented with two alternative

theories for finding Valdez guilty of assaulting Officer Holguin: (1) when she kicked him or (2) when she bit him. Because it is dispositive, we will focus only on the bite.

The record is clear that at the time Valdez bit Officer Holguin, he was in uniform, on duty, and on patrol responding to a domestic disturbance call. Additionally, Valdez was under arrest, handcuffed, and being escorted to the officers' patrol vehicle for transport—the legality of such arrest being irrelevant to this analysis. *See Cooper v. State*, 956 S.W.2d 95, 97 (Tex. App.—Tyler 1997, pet. ref'd) (citing *Gonzalez v. State*, 574 S.W.2d 135, 137 (Tex. Crim. App. 1978)). The record also established that Valdez resisted the officers' efforts to place her in their patrol vehicle. And due to her resistance, the officers—without using unlawful, unjustified force—placed Valdez on the ground, at which point she bit Officer Holguin's calf.

This evidence is legally sufficient to establish that Officer Holguin—in taking Valdez into custody for assaulting him—was legally discharging an official duty when Valdez assaulted him. *See Ortega v. State*, 207 S.W.3d 911, 919 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.) (overruling the appellant's contention that he was entitled to use force against the officer's unlawful use of his service weapon since such weapon was holstered at the time appellant used force against the officer). We overrule this point of issue.

2.2 <u>Whether Officer Holguin Failed to Comply With Section 573.001(g) of the Texas Health & Safety Code Is Irrelevant</u>

Valdez next contends that since Officer Holguin failed to comply with section 573.001(g) of the Texas Health and Safety Code, he was not lawfully discharging an official duty. We disagree.

Section 573.001(g) provides that after placing an individual under an emergency detention, the peace officer "shall immediately inform the person orally, in simple, nontechnical terms: (1) of the reason for the detention; and (2) that a staff member of the facility will inform the person of

the person's rights within 24 hours after the time the person is admitted to a facility." TEX. HEALTH & SAFETY CODE § 573.001(g)(1)–(2). However, the Court of Criminal Appeals has already held that "the 'lawful discharge' of official duties . . . does not mean that the officer has crossed every 't' and dotted every 'i' of every duty that relates to his public office." *Hall*, 158 S.W.3d at 474.

Consequently, Officer Holguin's apparent failure to comply with the Health and Safety Code did not render the discharging of his official duty unlawful. *Cf. Gonzalez*, 574 S.W.2d 135, 137 (Tex. Crim. App. 1978). Therefore, we overrule this point of issue.

## CONCLUSION

Accordingly, we affirm the trial court's judgment.

Velia J. Meza, Justice

DO NOT PUBLISH